CRANSTON TEACHERS'
ASSOCIATION

v.

CRANSTON SCHOOL COMMITTEE.

No. 78–417–Appeal.

Supreme Court of Rhode Island.

Dec. 9, 1980.

Natale L. Urso, Thomas J. Liguori, Jr., Westerly, for appellant.

Vincent J. Piccirilli, Providence, for appellee.

OPINION

KELLEHER, Justice.

This is a civil action in which the Cranston Teachers' Association (the association) seeks a declaratory judgment regarding its rights under a collective–bargaining agreement entered into between the association and the Cranston School Committee (the committee) in September of 1971.

We first examined the events leading to this litigation in *Cranston Teachers Ass'n v. Cranston School Committee*, R.I., 386 A.2d 176 (1978), our first attempt to resolve this matter. However, given the unique circumstances surrounding this case, we shall recite those facts again even though we are not unmindful of Homer's lament, "It is tedious to tell again tales already plainly told." [1]

The agreement in question was to cover a two year period beginning on September 1, 1971, and ending August 31, 1973. Among the specified conditions included in the agreement was a ten–step salary schedule providing for salary increases over the level established by the preceding year's contract. The salary schedule ended with this sentence: "This Salary Scale subject to the wage freeze." This phrase was a reference to Presidential Order No. 11615, "Providing For Stabilization Of Prices, Rents, Wages and Salaries" (order), 36 FR15727 (1971), reprinted in [1971] U.S.Code Cong. & Ad. News p. 2575, promulgated on August 17, 1971, by then President Richard M. Nixon. The order took effect upon promulgation and was scheduled to terminate ninety days later.

Relying on the executive order, the committee refused to institute the wage increases contained in the agreement until the wage freeze ended on November 14, 1971. The association disputed this interpretation of the order and requested a ruling from the Cost of Living Council (the council), the agency responsible for enforcing the provisions of the order. In due course, on December 21, 1973, the council issued a decision in which it concluded that

---

1. "The Odyssey," book XII.

the order, and the regulations issued thereunder, did not prohibit payment of the salary increases at issue. The council noted parenthetically that whether or not such increases should be paid rested on how the contract between the parties was to be construed.[2]

The committee chose to interpret the agreement as obligating the payment of salary increases only for the period subsequent to the termination of the wage freeze and voted to deny the request for payment at its meeting on January 21, 1974. Later, on June 14, 1974, the association instituted this suit, in which it sought a declaratory judgment that would establish its members' right to receive the disputed portion of the pay increase. Motions for summary judgment by both parties were denied, and following a hearing on the merits at which the only evidence admitted was the order and the agreement between the parties, the trial justice concluded that the wage-freeze order was unambiguous and that the only interpretation of which it was reasonably susceptible was that the pay increases took effect on September 1, 1971.

However, on appeal we concluded that the phrase was facially ambiguous and could reasonably be interpreted in several ways. Accordingly, the decision of the trial justice was set aside and the case remanded for consideration of parol evidence to aid in the interpretation of the contract. We also observed that although it was clear that the Superior Court had subject-matter jurisdiction over the labor agreement, pursuant to G.L. 1956 (1969 Reenactment) § 9-30-1, a motion for summary judgment "properly articulated" could raise the distinct question of whether the court should have exercised that power. *Cranston Teachers Ass'n v. Cranston School Committee*, R.I., 386 A.2d at 178.

On remand, the committee accepted our implicit invitation and filed a motion for summary judgment, alleging that the "plaintiffs have elected a remedy to resolve this dispute in other than Superior Court for the State of Rhode Island." That motion was granted by another trial justice.

The committee's reliance on the election-of-remedy doctrine is based upon a proviso found in art. VI of the collective-bargaining agreement which sets out in great detail the grievance procedures. Under the terms of art. VI(d)(7)(e), recourse by a teacher to the grievance procedure is to be construed as a waiver of any legal or statutory right to relief that might otherwise be available. Article II defines a teacher as one who is included among all employees within the negotiating unit represented by the association and makes it quite clear that the association is the negotiating unit's "sole and exclusive statutory representative." According to art. VI(a), grievances may be filed by a teacher or by the association.

Since we are here concerned with the grant of a motion for summary judgment, we must review the record to determine if there is a dispute about any material issue of fact pending at the time judgment was entered for the committee. If there was, the judgment must be vacated; if there was none, the judgment must be affirmed.

The record indicates that in October 1974 the committee had filed interrogatories and requests for admissions pursuant to the terms of Super.R.Civ.P. 36, in which the association was asked to concede that "no grievance has been filed" relative to the salaries due the teachers for the school year 1971-72. The association responded by insisting that grievances had been filed. Later, interrogatories propounded by the committee elicited a response in which the association's grievances were described as the

---

2. The Cost of Living Council's decision stated in part,

"The collective bargaining agreement in question, when viewed in the light of the conflicting assertions by the parties, does not specifically and unambiguously provide for increases in wages and salaries which were scheduled to take effect during the freeze. Accordingly, the parties must before implementation of any adjustments pursuant to this Decision and Order, determine the effective date of the pay adjustments provided in the parties' collective bargaining agreement for the 1971-72 school year." *Id.* at ⸀2.

filing of two letters, one dated April 9, 1973, and the other carrying a date of December 27, 1973. The April letter was sent to the superintendent of schools on behalf of the association by the executive secretary of the union with which the association was affiliated. It asked that "your school committee take action forthwith to honor the decision and order of the U.S. Pay Board." The December communication was sent on behalf of the association to the committee's chairman by the association's attorney. It also asked for the payment allegedly due for the period in dispute.

Although the agreement makes no provision for initiating a grievance at the committee level, it does specifically provide for the filing of a grievance with the superintendent when it is based upon an action of the committee which has such finality that the superintendent can do nothing but obey the committee's mandate. It is clear from the record that the association, by its own admission, has sought to invoke the grievance procedures of the collective–bargaining agreement. Having done so, the teachers, through their representatives, decided that their rights to back pay were and are to be initially determined through the arbitration processes set out in the agreement. Having made this election, the association and its members were foreclosed from seeking redress in the Superior Court.

The association's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court with a direction that judgment be entered dismissing the association's complaint.

MURRAY, J., did not participate.