CITY of Pawtucket

v.

PAWTUCKET LODGE NO. 4, FRATERNAL ORDER OF POLICE.

Nos. 86–356–Appeal, 86–357–Appeal and 86–359–Appeal.

Supreme Court of Rhode Island.

July 5, 1988.

Vincent J. Piccirilli, Palombo & Piccirilli, Cranston, for plaintiff.

Edward T. Hogan, Thomas S. Hogan, Hogan & Hogan, East Providence, for defendant.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

OPINION

MURRAY, Justice.

This matter comes before the court on appeal by the city of Pawtucket (the city) from three Superior Court judgments, all of which concern a disputed provision in a collective-bargaining agreement that was submitted to arbitration. The agreement was entered into by the city and the Pawtucket Lodge No. 4, Fraternal Order of Police (the union).

The city contends that the Superior Court erred in (1) denying the city's motion to vacate a 1980 arbitration award, (2) denying the city's petition for declaratory judgment, and (3) confirming a 1985 arbitration award. We consolidated the three appeals. We affirm in part and reverse in part.

In 1980 the city and the union commenced collective bargaining, and the union submitted the following proposal:

"Article IV Section 1 *Vacancies Permanent* (Add the word PERMANENT to title. Sections 1(a) and (b) remain the same).

Add to Section 1:

(c) Vacancies—Other—

Vacancies shall be further defined as any openings in shifts due to days off, vacations, sickness, or any other necessary circumstances other than a permanent vacancy. Positions shall be filled by seniority on a rotating basis."

The negotiations between the city and the union were unsuccessful, and the union demanded interest arbitration pursuant to the Rhode Island Policemen's Arbitration Act, G.L. 1956 (1986 Reenactment) § 28–9.2–4.[1] Louis A. Mascia chaired the interest arbitration panel that rendered an award granting that, inter alia, article IV,

section 1(c), be included in the agreement between the city and the union. Subsequent to the Mascia award a dispute arose over whether article IV, section 1(c), was a cost item. The city did not seek to vacate this award, which henceforth is referred to as the Mascia award. A request was filed that the arbitration panel reconvene to resolve the issue. The record before us indicates that no action was taken on this request.

Thereafter the union alleged that the city had violated the replacement provision in article IV, section 1(c), and the dispute was submitted for grievance arbitration which commenced in March 1981. The single arbitrator, David Bloodsworth, addressed two questions: (1) Has the city, from July 1, 1980, to date, violated article IV, section 1(c), and (2) If so, what shall the remedy be? On September 30, 1985, the arbitrator rendered a decision that found that the city had, from July 1, 1980, to the date of award, violated the replacement provision. This will be referred to as the Bloodsworth award.

The arbitrator retained jurisdiction for a period of sixty days from the date of this award to determine the remedy. Thereafter on November 29, 1985, the arbitrator directed the city to pay the union $2,306,718. The sum equaled the total number of days off taken by patrol personnel for sick days, vacation days, military leave, injury on duty, bereavement, union business, suspension days, and personal days. The regularly scheduled days off were not included in the equation. The arbitrator multiplied the number of days off by eight hours at time and one-half. He used the patrol personnel's hourly rate at the beginning of each contract year. The city was also directed to comply with the provision prospectively by filling all vacancies as required by article IV, section 1(c).

---

1. "Interest" arbitration has been distinguished from "grievance" arbitration. Interest arbitration concerns arbitration to set the terms of a collective-bargaining agreement. Grievance arbitration refers to the resolution of grievances arising under an existing agreement. *See Rhode*

*Island State Police Lodge No. 25 v. State,* 485 A.2d 1245, 1248 (R.I. 1984) (Kelleher, J. dissenting). In the instant case the Mascia award involved interest arbitration and the Bloodsworth award involved grievance arbitration.

## I

■ The city contends that the trial justice erred in denying the city's motion to vacate the Mascia award. We disagree. The Mascia award was filed on July 23, 1980. The city filed a motion to vacate the Mascia award on January 29, 1986, approximately five and one-half years subsequent to its issuance. General Laws 1956 (1986 Reenactment) § 28–9–21 requires "[n]otice of a motion to vacate, modify or correct an award must be served upon the adverse party, or his attorney, within three (3) months after the award is filed or delivered * * *."

In the instant case the union properly filed a motion to dismiss the city's motion to vacate, as opposed to those cases wherein the court addressed this matter in a different factual context. *See School Committee of North Providence v. North Providence Federation of Teachers, Local 920, American Federation of Teachers (AFL–CIO)*, 122 R.I. 105, 404 A.2d 493 (1979). Therefore, we hold that § 28–9–21 is applicable to the occupational arbitration acts of chapter 9 of title 28, including the Policemen's Arbitration Act, § 28–9.2–1. In the absence of statutory language specifically extending the prescribed three-month period during which a motion to vacate an arbitrator's award may be brought, we are bound to apply the existing law.

■ The record indicates that the union properly raised the statute-of-limitations issue in a timely manner. The complaint stated on its face that the statute had run. 1 Kent, *R.I. Civ. Prac.*, § 12.10 at 116–17 (1969). Hence we find that the trial judge correctly denied the city's motion to vacate the Mascia award. In light of the foregoing we do not reach the additional contentions set forth in the city's motion to vacate the Mascia award.

## II

Subsequent to the interest-arbitration proceedings and the filing of the Mascia award, article IV, section 1(c), became a valid provision in the collective-bargaining agreement, in effect between the city and the union from July 1980 to June 1981. The practical effect of the provision was to fill all vacancies on a mandatory basis, thus ensuring a full complement of police officers for each platoon. However, the city did not implement section 1(c). The arbitrator, David Bloodsworth, conducted grievance-arbitration proceedings from August 1981 to November 1985. The arbitrator accepted testimony and affidavits from the interest-arbitration panel members with regard to their decision to include section 1(c) in the agreement. The affiants indicated that section 1(c) was included in the agreement in the belief that the proposal was a no-cost item. However, the arbitrator found that

"What the panel did, i.e., award the Union's proposed language changes in article IV, is, despite the consequences, plain and clear. The language is, simply, not susceptible to different interpretations. Since I am duty bound by the terms of this agreement to read, interpret, and apply the language contained therein, I cannot use extrinsic evidence to give meaning to a provision that is clear on its face."

The city had argued that the provision was never contemplated by the parties because implementation of the provision would require that every police officer must work 365 days a year. The city contended that the cost is so prohibitive that it is unreasonable. The city also claimed that the union had never represented the proposal as a cost item and that consequently the interest-arbitration panel was misled. The arbitrator disagreed with the city and found that the proposal in the interest-arbitration case was both introduced and explained by Officer Joseph Corey, who was cross-examined by the city and questioned by the panel. He found that Officer Corey's explanation of article IV, section 1(c), was not misleading. He further found that the union did not present cost data concerning its demands.

The arbitrator stated that the city had offered cost estimates of the proposed provisions by the union. However, the city failed to present cost estimates with regard

to article IV, section 1(c). He stated that the city and the panel may have made a mistake in judging the impact of the provision, but he held that the language of the provision was clear and unambiguous. He conceded that the cost implications were expensive. However he disagreed with the city's contention that the provision is prohibitively expensive. The arbitrator observed that the city had failed to seek to vacate, to modify or to clarify the interest-arbitration award as required by statute even though the staggering economic consequences were patent. He concluded that the city had, from July 1, 1980, to September 30, 1985, violated article IV, section 1(c).

The arbitrator retained jurisdiction for sixty days to determine the remedy. On October 21, 1985, during the sixty-day period, the city filed a motion to vacate the Bloodsworth award. Thereafter, on November 29, 1985, the remaining part of the Bloodsworth award was filed. The arbitrator stated that the city objected to the validity of the union's cost figures. However, the city had not submitted an alternative formulation of costs. The arbitrator observed that the city had been apprised of the substantial financial implications of the union's claim from the commencement of the grievance-arbitration proceedings on August 31, 1981. He observed, "Yet some four agreements later, Article IV, section 1(c) remains intact without the city having sought its removal in either contract negotiations or interest arbitration procedures."

The city interposed an argument relying on a Superior Court decision that found that a mutual mistake regarding a seniority provision in the same agreement had had a material effect on the agreed exchange of performances between the parties. See *Pawtucket Lodge No. 4, Fraternal Order of Police v. City of Pawtucket*, C.A. No. 84–5000, filed September 4, 1985. There the court held that the agreement was voidable. The provision at issue in that dispute is unrelated to the instant case. The arbitrator acknowledged that decision. However he found that the contract was not void in its entirety. Furthermore he found that each contract executed

by the parties contained a severability provision.

The arbitrator held hearings with regard to the remedy, and determined that a monetary remedy was appropriate based on the evidence and testimony before him. The award in the amount of $2,306,718 was directed to the union rather than to the individual members. (*See supra.*) He stated that "[s]ince it is not possible to determine who, among members of the bargaining unit would have filled in at time and one half had the city been in compliance with the contract, monetary remedies for individual patrolmen are not granted." The arbitrator directed the city to make the union whole from July 1, 1980, to the date of the award, November 29, 1985. The city was directed to comply prospectively with section 1(c) by filling all vacancies as required by the provision.

On December 5, 1985, approximately one week following the Bloodsworth award, the city, relying on the Superior Court's decision that declared the agreement voidable, notified the union that it declared the collective-bargaining agreement void. In addition, the city declared null and void all collective-bargaining agreements between the city and the union, including contracts between July 1980 and December 1985. Thereafter, on December 15, 1985, the union filed a petition to confirm the Bloodsworth award. On January 29, 1986, the city filed a petition for declaratory judgment, and in response the union filed a motion to dismiss the city's petition.

■ A Superior Court trial justice granted the union's motion to dismiss the city's petition for declaratory judgment. The city contends that the trial justice erred because there is no provision in the Uniform Declaratory Judgment Act providing for the dismissal of a claim. Therefore, the city argues that the trial justice was obliged to determine the legal status and rights of the parties. We disagree.

The trial justice relied on *Cranston Teachers' Association v. Cranston School Committee*, 423 A.2d 69, 70–71 (R.I. 1980), where we held that parties who elect to

submit to arbitration for purposes of resolving disputed issues are barred by the election-of-remedies doctrine from seeking redress in the Superior Court. In the instant case, the trial justice found that the city had, by its own volition, sought to submit the dispute to grievance-arbitration proceedings. In addition, the trial justice added that the arbitrator, Bloodsworth, was cognizant of the Superior Court decision declaring the agreement voidable. We cannot overlook the fact that the city submitted the dispute to grievance arbitration, received an unfavorable decision, and returned to the courthouse to seek relief. We are of the opinion that the trial justice properly relied on *Cranston Teachers' Association* in denying declaratory relief to the city.

■ The city contends that the trial justice erred in denying the city's motion to vacate the arbitrator's award. We disagree, excepting the award of monetary damages. *See infra.* The city had argued that there was no valid submission because the issue framed by the arbitrator was different from the issue stated in the demand for arbitration.[2] The trial justice relied on *Providence Teachers Union v. Providence School Committee*, 440 A.2d 124, 127 (R.I. 1982), where we defined "submission" to mean "an agreement to arbitrate entered into after a particular dispute has arisen." We held that as a matter of law, procedural questions such as framing issues arising out of the dispute should be left to the arbitrator. We held that "[a]s long as the agreement to arbitrate is valid and the subject matter of the dispute is arbitrable, the arbitrator may frame the issues to be decided." *Id.* at 128 (citing *Waverly Mineral Products Co. v. United Steelworkers of America, AFL–CIO, Local No. 8290*, 633 F.2d 682, 685–86 (5th Cir. 1980)). The trial justice properly concluded that the arbitrator was justified in framing the precise issue. Hence, we shall not disturb the ruling.

■ The city argues that the trial justice erred by not vacating the award because the arbitrator improperly retained jurisdiction to determine the remedy. We have held that "[a]n award will not fail by reason of the arbitrators' retaining jurisdiction to perform the ministerial task of computing the amount of the award." *Providence Teachers Union Local 958–American Federation of Teachers v. Providence School Committee*, 433 A.2d 202, 206 (R.I. 1981). To hold otherwise would effectually undermine an arbitrator's authority to resolve disputes between parties permanently. Therefore, we shall not disturb the trial justice's ruling.

■ The city argues that the trial justice erred in not vacating the arbitration award because the award achieves an arbitrary and irrational result. It is a well-established proposition that our judicial authority to overturn an arbitrator's award is limited. Absent a manifest disregard of a contractual provision or a completely irrational result, the award will be upheld. An arbitrator has the inherent power to fashion an appropriate remedy as long as the award draws its essence from the contract and is based upon a "passably plausible" interpretation of the contract. *Council 94, American Federation of State, County, and Municipal Employees AFL–CIO v. State*, 475 A.2d 200, 203 (R.I. 1984); *Rhode Island Council 94 v. State*, 456 A.2d 771, 773–75 (R.I. 1983).

The agreement between the parties was devoid of a provision specifying damages for breach of the contract. The submission empowered the arbitrator to determine an appropriate remedy. He was persuaded that a monetary remedy was proper and added that he was obligated to read, interpret, and apply the contract as written. He found that since it was not possible to determine which members of the bargaining unit would have filled in the vacancies, the city was directed to pay the money to the union.

2. General Laws 1956 (1986 Reenactment) § 28–9–18 provides:
  "Grounds for vacating award. —(a) In any of the following cases, the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated: * * * (3) If there was no valid submission or contract * * *."

■ We accept the arbitrator's finding of fact that it is impossible to ascertain with particularity from the evidence those members of the bargaining unit who would have been entitled to compensation had the city complied with the contract, which contract envisioned payment, if any, to specific identifiable members of the union for work performed. Our statutory authority for vacating an arbitrator's award is set forth in § 28–9–18 that provides in part, "(a) the court must make an order vacating the award * * *: (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter was not made." We hold that the arbitrator exceeded his authority by directing the monetary award to the union.

Since the arbitrator himself admits that the specific individuals entitled to compensation cannot be identified, we conclude that the award to the union was an inappropriate creation of a beneficiary not drawn from the essence of the contract and must be vacated. We direct that there be no further proceedings with regard to this matter since the arbitrator's record before us is binding.

We have considered the other issues of law raised by the parties and find them to be without merit.

The plaintiff's appeal is sustained in part and denied in part. The arbitrator's award is vacated, only insofar as it made a monetary award to the union. In all other respects the appeal is denied and dismissed. The case may be remanded to the Superior Court for the entry of judgment in accordance with this opinion.