DECISION
This is a Petition to Vacate an arbitrator's decision and award filed by the State of Rhode Island Department of Environmental Management (hereinafter DEM), and a Motion to Confirm that award filed by Council 94 of the American Federation of State, County and Municipal Employees (hereinafter AFSCME) Jurisdiction in this Superior Court is pursuant to G.L. 1985 Reenactment) 28-9-17 and 28-9-18. For the reasons hereinafter stated, the Motion to Vacate is denied and arbitrator's award is confirmed.
FACTS AND TRAVEL
This case arises out of a grievance filed by three employees of DEM's Department of Parks and Recreation. The employees were stationed at Lincoln Woods Park where, for many years, they worked 40 hours per week according to a Monday through Friday schedule. In addition, from mid-May through mid-September the employees were required to work an additional day on the weekends. Plaintiff AFSCME claims the terms of the master contract it negotiated on behalf of the employees and the past practice of DEM required the employees to paid overtime for their summer weekend work. In fact, the employees were compensated at an overtime rate of one and one-half times their pay for their weekend work until June 1990.
In early 1990, the Director of DEM responded to budget constraints with a moratorium on overtime payments, instructing all division chiefs and park managers to redraft their schedules so that no employee worked more than five days per week. To offset the weekend work necessary to meet the heavy demand for services at the state's parks during the summer, employees were scheduled to work some weekend days and were compensated with days off during the week. No overtime was paid for the weekend work. By the end of June 1990, seasonal employees were hired to meet the summer demands on the park. The employees were then given a choice of returning to their Monday through Friday schedule or continuing to work on the weekends and take two weekdays off.
The overtime prohibition continued in 1991. During that summer, however, the employees were not afforded the option of remaining on their Monday through Friday schedule. Instead they were ordered to work every other weekend and to take a weekday off so they would not exceed 40 hours in any workweek.
Three employees at the Lincoln Woods Park filed a grievance and, in accordance with the collective bargaining agreement, requested arbitration. On behalf of the employees, AFSCME claimed (1) DEM unilaterally changed their work schedules in contravention of Article 5.2 of the collective bargaining agreement; (2) DEM ignored Article 8 of the agreement, which defines overtime as "the required performance of work in excess of the established work week"; and (3) DEM violated Article 5.6, which prohibits voluntary or mandatory time off to compensate employees for work performed before or after scheduled shift hours.
The arbitrator issued a decision and award on March 2, 1992. In it he found that DEM had violated the express provisions of the contract by unilaterally changing the employees' schedules. He ordered the state to pay the employees overtime for each weekday they were scheduled to take off to keep their weekly hours below 40 during the summers of 1990 and 1991.
The state has moved to vacate the award, claiming the employees were subject to a longstanding but "peculiar" schedule which required weekend work in the summer. It further contended the arbitrator exceeded his authority by fashioning an award that violates G.L. (1984 Reenactment) § 36-4-63.
JUDICIAL REVIEW OF ARBITRATION DECISIONS
This Court's authority to review an arbitrator's award is found in § 28-9-18. Under this statute there are three specific grounds for vacating an arbitration award. They are:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in 28-9-13.
Accordingly, this Court's authority to overturn an arbitrator's award is limited. City of Pawtucket v. PawtucketLodge No. 4, 545 A.2d 499, 503 (R.I. 1988). The arbitrator's award must be upheld unless there is a "manifest disregard of the contractual provisions, or a completely irrational result." Townof Coventry v. Turco, 574 A.2d 143 45 (R.I. 1990) (quotingJacinto v. Egan, 120 R.I. 907, 914, 391 A.2d 1173, 1176 (1978);Belanger v. Matteson, 115 R.I. 32 [115 R.I. 332], 356, 346 A.2d 124, 138 (1975)).
Even if the arbitrator misconstrues the contract or the law, this Court has no basis for striking down the award. Zuromski v.Providence Sch. Comm. 520 A.2d 137 (R.I. 1987); Jacinto, 120 R.I. at 911, 391 A.2d at 1175. As long as "the award draws its essence from the contract and is based upon `passably plausible' interpretation of the contract it is within the arbitrator's authority and [this Court's] review must end." R.I. Council 94 v.State, 456 A.2d 771, 774-75 (R.I. 1983); Jacinto, 120 R.I. at 912, 391 A.2d at 1176 (quoting United Steelworker's of America v.Enterprise Wheel Car Corp., 363 U.S. 593, 80 S.Ct. 1358 (1960)).
Furthermore, the burden of proof is on the party challenging the award and every reasonable presumption in favor of the arbitrator's award will be made. Coventry Teachers' Alliance v.Coventry Sch. Comm., 417 A.2d 886, 888 (R.I. 1980).
THE ARBITRATOR'S DECISION AND AWARD
The record in this case consists of a copy of the collective bargaining agreement and the arbitrator's decision and award. The decision and award is replete with references to specific contract provisions and "the common law of the shop." SeeJacinto, 120 R.I. at 912, 391 A.2d at 1176 (1978). The arbitrator stated:
 The best proof of the established work week is the work records of the employees from 1984 to 1990. During that entire period, they were never scheduled for a weekday off until 1990 and whenever they worked on a weekend they received overtime pay. . . . In May and June of 1990 and throughout the summer of 1991, grievants were ordered to work weekends and to take off weekdays. These changes were clearly in violation of Section 5.6 which prohibits changing employees schedules to avoid paying overtime. Award, at 9.
This finding, that the employees worked 40 hours per week on Mondays through Fridays, fits the definition of standard workweek in Article 5.1 (2) of the contract. Based on this finding that there was a standard work schedule in effect, the arbitrator found that DEM violated Article 5.2 of the contract by unilaterally changing the employees' scheduled work hours.
Article 5.2 states:
 5.2 It is recognized that there are now other work schedules peculiar to certain classes of positions, which are recognized by the State and the Union, and such exceptions shall remain in full force and effect. In the event it becomes necessary to change the scheduled work hours in any area, the State shall notify the Union's Executive Director, and the parties hereto shall make every effort to agree mutually on the hours for such schedules and fix the hours subject to the grievance procedure and arbitration provisions of this Agreement. In the event that new schedule for hours of work is agreed upon, that schedule shall be posted and bid upon in accordance with the seniority provisions of this Agreement. If the hours are not agreed to, then the issue shall be submitted to expedited arbitration.
DEM argues that the arbitrator misconstrued the first sentence of Article 5.2 failing to recognize that these employees were subject to "other work schedules peculiar to certain classes of positions, which are recognized by the State and Union." However, this argument clearly contradicts the long line of case law that holds that this court will not upset an arbitrator's decision unless "there is a manifest disregard for the contractual provisions, or a completely irrational result." (Citations Omitted).
Here, the arbitrator acknowledged that the contract allows some schedules to be recognized as exceptions to the standard schedules listed in Article 5.1 but found that the employees' schedules did not fit within the exceptions. His findings clearly draw their essence from the contract and are at least "passably plausible."
The arbitrator's finding that the union violated Article 5.6 also was clearly based on the contract. Article 5.6 states, "No employee who has performed work before or after scheduled shift hours will have the right or will be required by the State, by reason thereof, to take time off to equalize his working hours." With reference to this provision, the arbitrator found that DEM had no right to reduce employees' regularly scheduled work week in order to avoid paying overtime." Likewise, DEM's argument that the arbitrator's award misconstrued the contract's Article 8 overtime provisions is not persuasive because the arbitrator's finding is based on a plausible construction of the contract.
Finally, DEM argues that the arbitrator exceeded his authority because the award violates G.L. 36-4-63 by requiring the payment of overtime for hours that were not actually worked. This is simply not the case. General Law 36-A-63 has no applicability to this controversy. This section merely prohibits a state employee from counting hours expended for such leave as sick time, vacation leave, or other hours not actually worked in the calculation of overtimes and has no relationship to this case.
Here the State violated the collective bargaining agreement by requiring these employees to be absent from work in order to avoid paying them overtime for working on Saturday and Sunday. It is disingenuous for the state to raise 36-4-63 as a defense to a proper remedy fashioned by the arbitrator.
Conclusion
For the above reasons, this court finds that the arbitrator's award draws its essence from the contract, is based upon "passably plausible" interpretation of the contract, and is within the arbitrator's authority. Accordingly, DEM's motion to vacate is denied, and the award is confirmed.