799 A.2d 274 (2002)
STATE of Rhode Island, DEPARTMENT OF ENVIRONMENTAL MANAGEMENT
v.
STATE of Rhode Island, LABOR RELATIONS BOARD et al.
No. 2000-372-M.P.
Supreme Court of Rhode Island.
June 14, 2002.
*275 Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.
John Breguet, Esmond, for Plaintiff.
Gerard Cobleigh and Margaret Hogan, Warwick, for Defendant.

OPINION
GOLDBERG, Justice.
This case came before the Court on May 13, 2002, on the petition for certiorari of the State of Rhode Island, Department of Environmental Management (DEM or department) pursuant to G.L. 1956 § 42-35-16 of the Administrative Procedures Act (APA). DEM is seeking this Court's review of a Superior Court judgment upholding a finding by the State of Rhode Island, Labor Relations Board (Labor Board) that DEM had committed unfair labor practices. *276 For the reasons set forth herein, we grant the petition and quash the judgment of the Superior Court.

Facts and Travel
On July 6, 1994, apparently aware that a job opening for a part-time "principal forester" was about to be posted by DEM, Rhode Island Council 94 AFSCME, AFL-CIO (Council 94 or union), the bargaining unit for DEM employees, filed a grievance with DEM. The grievance asserted that by posting a part-time position, DEM violated the union's collective bargaining agreement (agreement or CBA). The union requested that the posting be lifted and that DEM create an opening for a full-time position. The department denied the grievance on the grounds that a full-time principal forester was not needed, and that money for a full-time position was notavailable. DEM further responded that the CBA contained no provisions prohibiting the creation of part-time positions. Indeed, DEM concluded that the agreement itself specifically included terms relating to part-time employees. In accordance with the terms of the CBA, Council 94 appealed this determination to the Department of Administration's Office of Labor Relations. The Office of Labor Relations, for substantially the same reasons employed by the department, denied Council 94's grievance.
To pursue the claim further, Council 94 was required to submit the matter to binding arbitration as provided by the CBA. Despite this contract provision and the fact that the union had elected to undertake grievance resolution through the collective bargaining process, Council 94 failed to submit the matter to arbitration. Rather, the union turned to the Labor Board for the same relief and alleged that DEM had committed an unfair labor practice in violation of G.L. 1956, chapter 7 of title 28, by posting the job without first negotiating the terms of employment with Council 94, and "violated the collective bargaining agreement."
In December 1994, pursuant to § 28-7-9(b)(5), in an attempt to resolve the matter, the Labor Board conducted an informal hearing between the parties. This effort, however, was unsuccessful, and in February 1997, two years and two months later, the Labor Board issued a formal complaint specifically charging that DEM committed two unfair labor practices by refusing to bargain collectively with union representatives in violation of § 28-7-13(6) and by interfering, restraining or coercing employees in the exercise of their rights to bargain collectively in violation of § 28-7-13(10). A formal hearing was scheduled for April 17, 1997, but was continued for various reasons until September 1, 1998. In the interim, DEM sought dismissal of the Labor Board's complaint, arguing that the Labor Board lacked jurisdiction to interpret a CBA, and that the union, having elected to pursue its remedy through the collective bargaining process, should have proceeded to arbitration. Finally, DEM argued that the complaint was not adjudicated in a timely manner, as required by § 28-7-9, and therefore should be dismissed.
At the conclusion of the hearing, the board rejected DEM's argument s and found that the department had engaged in both of the charged unfair labor practices. Pursuant § 42-35-15 of the APA, DEM filed an administrative appeal that subsequently was heard and denied on June 20, 2000, by a justice of the Superior Court. DEM is before this Court on certiorari and, in addition to the arguments raised before the Labor Board, has raised four additional arguments in support of its petition. Because we conclude that DEM's election of remedies argument is dispositive, we need not address the remaining issues raised by the parties.

*277 Standard of Review
The APA sets forth the manner in which an aggrieved party may seek judicial review of an administrative decision and the standard of review to be employed by the Superior Court hearing justice. The court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the [aggrieved party] have been prejudiced because the administrative findings, inferences, conclusions, or decisions are * * * [m]ade upon unlawful procedure [or] [a]ffected by other error or law * * *." Section 42-35-15(g)(3)(4). On certiorari, this Court also employs a limited review of the record and we will review those questions of law that appear in the record. Berberian v. Department of Employment Security, Board of Review, 414 A.2d 480, 482 (R.I. 1980). Questions of law determined by the administrative agency are not binding upon us and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record. Carmody v. Rhode Island Conflict of Interest Commission, 509 A.2d 453, 458 (R.I.1986). Significantly, judicial review is available only to those parties who have exhausted all administrative remedies available to them within the agency. Section 42-35-15(a).

Discussion
The doctrine of election of remedies is one that is grounded in equity and is designed to mitigate unfairness to both parties by preventing double redress for a single wrong. 25 Am.Jur. 2d Election of Remedies § 2 (2001). This Court, in Cranston Teachers' Association v. Cranston School Committee, 423 A.2d 69, 71 (R.I.1980), recognized that those who elected to invoke the grievance procedures of a CBA were barred from subsequently seeking redress in the Superior Court. In Cranston Teachers' Association, the teachers' association sought to recover back pay that had been withheld from teachers during a wage freeze instituted pursuant to a Presidential Order. Id. at 69, 70. After utilizing the methods outlined in the CBA to begin the grievance process, the teachers' association also filed a declaratory judgment action in Superior Court seeking a declaration of its rights under the CBA. Id. at 70. The complaint was summarily dismissed upon a finding that plaintiff had elected its remedies, and this Court affirmed the dismissal noting that "the teachers, through their representative, decided that their rights * * * were and are to be initially determined through the arbitration processes set out in the agreement [and,] [h]aving made this election, the association * * * [is] foreclosed from seeking redress in the Superior Court." Id. at 71.
This Court employed similar reasoning in City of Pawtucket v. Pawtucket Lodge No. 4, Fraternal Order of Police, 545 A.2d 499 (R.I.1988), when we upheld a Superior Court decision to dismiss a petition for declaratory jud gment. In that case, the city sought a declaration that its CBA with the policemen's union was void and that previous arbitration awards should be vacated. Id. at 500. The policemen's union had been awarded compensation by an arbitrator who found that the city had violated the CBA by failing to rotate police officers into positions opened by temporary vacancies. Id. The Superior Court denied declaratory relief to the city, finding that the case was "barred by the election-of-remedies doctrine." Id. at 503. We upheld the dismissal stating that "[w]e cannot overlook the fact that the city submitted the dispute to grievance arbitration, received an unfavorable decision, and returned *278 to the courthouse to seek relief." Id. As such, we held that the trial justice properly relied on Cranston Teachers' Association in denying declaratory relief to the city.
More recently, we have reaffirmed our continued adherence to the long-standing election of remedies doctrine. In Cipolla v. Rhode Island College Board of Governors for Higher Education, 742 A.2d 277, 281 (R.I.1999), we held that "when one party to a CBA attempts to take advantage of the grievance procedure and loses, the election of remedies doctrine prohibits that party from pursuing the same dispute in the courts of this state." In Cipolla, an employee of Rhode Island College, whose job was funded by grants that provided for pension contributions but who had not been enrolled in a pension program, filed a grievance seeking retroactive enrollment in the retirement system. Id. at 279. The plaintiff in Cipolla chose not to proceed to arbitration after his grievance was denied, but rather filed a complaint for injunctive relief in the Superior Court. Id. The defendant's motion for summary judgment was granted on the basis of election of remedies, and this Court affirmed stating that "[o]nce the plaintiff entered the grievance procedure * * * he should have pursued that remedy to its conclusion." Id. at 282.
Moreover, in Rhode Island Employment Security Alliance v. State Department of Employment and Training, 788 A.2d 465 (R.I.2002) (State, DET), a case in which thirteen computer operators employed at the Rhode Island Department of Labor and Training and theirunion, the Rhode Island Employment Security Alliance, Local 401, S.E.I.U., AFL-CIO (Local 401), filed suit in the Superior Court seeking to redress alleged violations of the Merit System Act, G.L.1956 chapter 4 of title 36. State, DET, 788 A.2d at 466. Local 401 sought declaratory relief in the Superior Court notwithstanding that eight plaintiffs already had obtained relief through Merit Act procedures and administrative appeals still were pending for two plaintiffs. Id. at 467. This Court held that "having elected their remedies, [plaintiffs] are now barred from pursuing the matter in court until the remedy they initiated has been exhausted." Id. at 468.
In the case before us, Council 94 resorted to the grievance process only to abandon this avenue after two unfavorable decisions but before it had fully exhausted its contract remedies through arbitration. "Once [the union] entered the grievance procedure, [it] had selected the remedy to adjudicate [its] claim, and [the union] should have pursued that remedy to its conclusion." Cipolla, 742 A.2d at 282. We are of the opinion that because Council 94 elected and later abandoned its remedy, the case was not appropriately before the Labor Board, nor was the dispute ripe for judicial review. Accordingly, we conclude that the administrative findings, inferences, conclusions and decisions of the Labor Board were made upon unlawful procedure, and the Superior Court hearing justice erred in upholding the Labor Board's decision.
The respondents have argued to this Court that the remedies sought by Council 94 are separate and distinct from the grievance process, and according to our holding in Cipolla, this distinction is sufficient to bar application of an election of remedies defense. We disagree. Again, the doctrine of election of remedies is equitable in nature and has at its core the salient purpose of preventing unfairness to the parties. Its availability is not as strictly constrained as respondents suggest. Further, our holding in Cipolla reflects the breadth of the doctrine in which we noted that the "grievance sought essentially *279 the same remedy as the complaint later filed in Superior Court." Cipolla, 742 A.2d at 281. (Emphasis added.) This is exactly the situation presented in this case. Significantly, Council 94 alleged in its complaint to the Labor Board that DEM acted in violation of the CBA. Through its grievance, the union sought to have the posting of the position of "principal forester" rescinded and re-posted as a full-time position. The relief obtained from the Labor Board was a cease-and-desist order from the unilateral creation of the identical part-time position. The Labor Board's decision required that DEM negotiate with the union, notwithstanding Council 94's intractable position that DEM post a full-time position. For the purposes of the doctrine of election of remedies, we are satisfied that identical relief was sought in each instance.
The respondent Labor Board further argues that it is vested with independent statutory authority to prevent unfair labor practices and, as a legislatively created body, it exercised that authority independently from the union. The Labor Board was not, however, created as a tribunal to resolve contract grievance claims. The Labor Board is designed to provide a remedial avenue to those who have been aggrieved by unfair labor practices; it performs an adjudicative function including the statutory authority to conduct hearings, make factual findings and issue cease-and-desist orders to those whom the Labor Board determines are engaging in unfair labor practices. This relief is separate and distinct from the grievance process. Thus, the doctrine of election of remedies is applicable to actions taken and heard by the Labor Board in the same manner as a complaint for judicial relief.

Conclusion
For the reasons stated herein, the petition for certiorari is granted, the judgment of the Superior Court is quashed and the papers in this case may be remanded to the Superior Court with our opinion endorsed thereon.