DECISION
Before this Court is the appeal of Robert Marchand and Stephanie Marchand ("Marchands") from a decision of the Zoning Board of Review of the Town of South Kingstown (the "Board"). The Board's decision, recorded on July 21, 2008, granted Daniel and Patricia Tanona ("Tanonas") a dimensional variance from a zoning sideline setback requirement at 36 Middle Road, South Kingstown, Rhode Island (the "property"). Appellants filed a timely complaint to this Court on July 29, 2008. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
The Marchands and the Tanonas own abutting lots in South Kingstown, Rhode Island. Both lots front Middle Road to the west, with the Marchands' lot to the north of the Tanonas' lot. The lots are in the area of Green Hill and have partial ocean views to the south. Both lots are also in an R-30 zoning district, which has a minimum lot size of 30,000 square feet and a minimum side yard depth of 20 feet. The Tanonas' lot, however, is only 19,274 square feet, making it a legal nonconforming lot. *Page 2 
The Tanonas built a vacation home on their lot in 1992. The house was built toward the northern side of the lot and faces the southern, downward sloping side of the lot, as opposed to facing the road frontage to the west. There is 34.8 feet between the house and the north sideline and 118.8 feet between the house and the south sideline. The septic system is located to the south of the house.
The proposed addition would be located at the back of the house, which is the north side, and would require a 10 foot dimensional variance on the north side of the lot. The addition is 21 by 33 feet, with a 3 foot 10 inch by 14 foot ell, and consists of a two-car garage and mudroom off the kitchen with a family room on the second floor. The Tanonas, who currently use the property as a vacation home, plan to live in the house year-round after their upcoming retirement and petitioned the Board for a dimensional variance in order to build an addition to accommodate the family's new use of the home. The Marchands objected to the granting of a dimensional variance because the addition would partially obstruct their ocean view and because it could be located where it would not require a variance.
On April 16, 2008, and June 18, 2008, the Board heard the Tanonas' request for a dimensional variance. At the proceedings the Board heard testimony and received evidence. At the first meeting on April 16, 2008, the Board heard from the Tanonas. The Tanonas testified they were retiring and wanted to make some additions to the property. (Tr. 4/16/08 at 3.) The Tanonas indicated they desired to add a mudroom off the kitchen, and a two-car garage with a family room on the second floor of the garage. Id. According to the Tanonas, the proposed addition would be ten feet from the northern boundary of the property, instead of the required twenty, which is the basis for their variance request. Id. As part of their testimony, the Tanonas stated they considered alternative locations for the addition, including the front yard, but any *Page 3 
addition in the front yard also required a variance.Id. at 4, 26-27. The Tanonas also testified that constructing the addition on the south side would interfere with the existing septic system, require the mudroom be located next to the living room, leave inadequate space for a driveway, put the garage on the front of the house, and require removal of the existing porch.Id. at 10, 13, 19. After learning of the Marchands' objections to the addition, the Tanonas testified they modified the roofline and added a dormer to make the roof more attractive.Id. at 6.
At the April 16, 2008, hearing the Board also heard testimony from Robert Marchand. Marchand objected to the variance application because the addition affected his view and said, "a building like that with a loss of view is a negative impact on my property."Id. at 20. At the hearing Marchand also offered a letter from Steve McGill ("McGill"), a real estate broker, who stated the assessed value of the property is $1,119,900, and that "if the view was to be blocked, the subject property could lose 30% of its current market value." Id. at 14-16. After discussing the nature and character of the property and its surrounding environment at length, the Board continued the hearing so the Board Members could view the property. Id. at 24-37.
The hearing resumed on June 18, 2008, and Gail Hallock ("Hallock"), the Tanonas' architect, testified that because a variance was needed for the garage she endeavored to make it as small as possible. (Tr. 8/18/08 at 10-11, 17.) She also discussed changes made to the addition in an effort to accommodate the Marchands' objections. Specifically, Hallock indicated the addition was moved four and a half feet to the east from the original plans to accommodate the Marchands. Id. at 12-13. In addition, she testified the size of the mudroom was reduced, and that a dormer and more windows were added to the north side of the addition on the second-floor level because of Robert Marchand's complaint the wall looked "plain." Id. Hallock also testified the proposed addition was not as tall as the existing house.Id. at 22-23. *Page 4 
Nathan Godfrey ("Godfrey"), a Realtor and certified real estate appraiser, testified the addition to the Tanonas' property would not reduce the Marchands' ocean view. Further, Godfrey also testified the addition is residential and consistent with the development scheme of the rest of the neighborhood. Id. at 35. Godfrey also noted that because a number of the surrounding properties also have garages, granting the variance would not alter the general characteristics of the area. Id. at 35-36. Additionally, Godfrey also disagreed with the conclusions of McGill. Godfrey testified, "[y]ou couldn't prove it by empirical data, I don't believe. I interviewed the tax assessor today. He never adjusted assessments because of new construction imposing upon the view."Id. at 37. According to Godfrey, the 30% diminution in value "is simply unsupportable." Id.
McGill, after being unavailable to testify in April, testified in June. McGill continued to assert the addition could devalue the Marchands' property. Id. at 54. In order to reach his determination of the value of the Marchands' view, McGill spoke to the tax assessor and conducted a number of calculations.Id. at 54-57. However, McGill also acknowledged his calculations were based on the plans submitted with the Tanonas' original application, and that he was not aware of the revised construction plans, which attempted to placate the Marchands' objections. Id. at 57-58.
The Board granted the variance on July 16, 2008. In its Decision, the Board found the following: (1) the hardship the Tanonas seek relief from is due to the unique characteristics and location of the existing home and not due to the general characteristics of the surrounding area; (2) the hardship is not due to a physical or economic disability of the Tanonas; (3) the hardship is not the result of any prior action of the Tanonas and is not the result of a desire to realize a greater financial gain; (4) granting the variance would not alter the general characteristics of the *Page 5 
surrounding area; (5) the relief being granted is the least relief necessary; and (6) the hardship the Tanonas would suffer if the variance is not granted is more than a mere inconvenience.
Appellants, the Marchands, timely appealed the Board's Decision to this Court. The Marchands argue the Tanonas' hardship was self-created because they were the original designers and builders of the home in 1992 and that the Tanonas' hardship is a mere inconvenience if the variance is not granted. Conversely, the Board contends the record shows substantial evidence existed to justify its decision that the Tanonas' hardship is more than a mere inconvenience if the variance is not granted. The Board also argues the Tanonas did not create their hardship because the existing home as built complies with all applicable dimensional regulations. For the reasons set forth herein, this Court affirms the Board's Decision.
 Standard of Review
This Court's review of the Board's decisions is governed by § 45-24-69(d), which provides in pertinent part that:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This standard of review is analogous to the standard applied by this Court in reviewing *Page 6 
administrative agency decisions. See Munroe v. Townof East Greenwich, 733 A.2d 703, 705 (R.I. 1999) (noting that standard of review for planning board of appeal decisions is the same as the "traditional judicial review standard that is applied in administrative-agency actions"). Accordingly, this Court "does not consider the credibility of witnesses, weigh the evidence, or make it own findings of fact." Id. The Superior Court's review is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Nickerson V. Reitsma,853 A.2d 1202, 1205 (R.I. 2004) (quoting BarringtonSchool Comm. v. State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992)). Legally competent evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Town ofSmithfield v. Churchill Banks Co., LLC,924 A.2d 796, 806 (R.I. 2007) (quoting Foster-Glocester Reg'lSchool Comm. v. Bd. of Review, 854 A.2d 1008, 1012 (R.I. 2004)).
Determinations of law, however, "are not binding upon [the Court] and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record." Dep't ofEnvtl. Mgmt. v. Labor Relations Bd.,799 A.2d 274, 277 (R.I. 2002) (citing Carmody v. Rhode IslandConflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986)). Thus, "[a]lthough factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation is a question of law [subject to] [] de novo review."Rossi v. Employees Ret. Sys. of Rhode Island,895 A.2d 106, 110 (R.I. 2006) (citing In re Advisory Opinion tothe Governor, 732 A.2d 55, 60 (R.I. 1999)). *Page 7 
 Analysis Self-Created Hardship
The first question is whether the Tanonas created their hardship by being the original builders of the existing house which they constructed in 1992. The Board found that the existing house "meets all of the zoning requirements and exceeds the side yard setbacks." The Board further rejected the Marchands' argument that building a structure that conforms with all zoning requirements prohibits future diminsional relief and noted that "many homeowners request additions to their homes beyond what is originally built as the needs of the homeowner change." On appeal, the Marchands assert that because the Tanonas built the existing home in 1993, they are prohibited from obtaining a dimensional variance, regardless of the fact the existing home was built to meet all zoning requirements. In support of their argument, the Marchands point to two cases,Sciacca, et al v. Caruso, et al, 769 A.2d 578 (R.I. 2001) andChesley, et ux v. The City of Annapolis Maryland,933 A.2d 475 (Md. 2007).
In Sciacca, the hardship the petitioner sought relief from by dimensional variance was found to be self-created. See769 A.2d at 584-85. The town planning board allowed the petitioner to subdivide her previously merged lots into two substandard lots. The petitioner had already constructed a home on one of the substandard lots. Immediately after the subdivision was granted, the petitioner sought, and was granted, a dimensional variance by the zoning board to construct a second house on the other of the substandard lots. On appeal, the Supreme Court held that the petitioner's prior action in subdividing the lot created her hardship, the substandard lot. Thus, the Supreme Court determined no variance should have been granted.
In Chesley, the hardship from which the petitioner sought relief by dimensional variance was also found to be self-created.See 933 A.2d at 492. The petitioners in that case sought to *Page 8 
tear down the existing home on their property and build a larger home with a pool and a two car garage. The city did not approve the petitioner's original plan and, after much negotiation, the petitioners agreed to build the home and pool without the garage and also agreed not to develop an area of their property to the western side of their lot to preserve public view of the Chesepeake Bay. After construction on the house and pool began, the petitioners sought a variance to build a garage. Their request for a variance was denied. On appeal, the court affirmed and held that their hardship was the result of their own decision to develop the property before obtaining approval for all of their construction plans.
The Tanonas' circumstances are clearly distinguishable from the petitioners in both Sciacca and Chesley. SeeSciacca, 769 A.2d 578; Chesley, 933 A.2d 475. In bothSciacca and Chesley, the petitioners calculated to circumvent the zoning requirements in the actions they took by planning to seek relief from them at a later point to meet their needs. See id. By contrast, the Tanonas built the existing home on the property in 1993 to meet all zoning requirements. The actual building of the home itself did not create the hardship, as the hardship did not arise until the intended use of the property changed. There is no evidence in the record that the Tanonas wanted a garage in 1993, but decided to build the house as it stands knowing they would request a variance at a later date.
Additionally, purchasers of property should not have a greater right to a variance than the original homebuilders. InSchool Comm. of City of Pawtucket v. Zoning Bd. of Review of Cityof Pawtucket, 86 R.I. 131, 137, 133 A.2d 734, 737 (1957), the Supreme Court held that a purchaser of property does not acquire less right to a variance than his predecessor. It follows that a purchaser of property also does not acquire more right to a variance than his predecessor. See Correia v. McCoy, No. P08-00651, 2009 R.I. Super. LEXIS 2, C.A., at *23 (R.I. Super. 2009); *Page 9 see also 3 Arden H. Rathkopf, The Law of Zoning and Planning, § 58:22 (2008). Homebuilders cannot be expected to foresee and plan for every need they may have throughout their ownership of property. To require such would give purchasers of property with existing buildings the right to a variance and deny the right to a variance to all persons who constructed the existing buildings on the property, regardless of when and for what purpose the buildings were constructed.
Therefore, because the Tanonas built the existing home to meet all zoning requirements, and did not deliberately build the existing home to create a hardship from which they would need relief, they did not create their hardship as a matter of law.
 More than a Mere Inconvenience
The second issue before the Court is whether denial of the Tanonas' requested variance would create more than a mere inconvenience. The appellants argue there is an alternative location for the addition that would not require a variance, and thus, the denial of the variance would not create more than a mere inconvenience. However, a petitioner need only show "an adverse impact that amount[s] to more than a mere inconvenience."Lischio v. Zoning Bd. of Review of Town of North Kingstown,818 A.2d 685, 691 (R.I. 2003). The petitioner need not show that there is no reasonable alternative. See id. at 692;see also Travers v. Zoning Bd. of Review of Town of Bristol,101 R.I. 510, 513, 225 A.2d 222, 224 (1967). For example, inTravers, the Supreme Court affirmed a zoning board's decision that granted a variance for a garage, which could be built in the middle of a yard without a variance. 101 R.I. at 514, 225 A.2d at 224. The reason for placing the garage in an area where a variance would be required was to have "a little yard." Id. The Supreme Court explicitly found that "to deny the applicant a fuller use of his property and at the same time serve no public interest would be arbitrary and an *Page 10 
abuse of discretion." Id. at 514-15. In WestminsterCorp. v. Zoning Bd. of Review of City of Providence,103 R.I. 381, 387, 238 A.2d 353, 357 (1968), the Court held that the test is "whether a literal enforcement thereof would have an effect so adverse as to preclude the full enjoyment of the permitted use." Therefore, the proper inquiry here is whether the Tanonas would be able to have full enjoyment of an addition to their home without obtaining the requested variance.
This Court is satisfied sufficient evidence exists in the record to support the Board's determination that the denial of the variance would create more than a mere inconvenience. The Tanonas testified that relocating the addition to the south side of the house entailed having the mudroom entrance go into the living room, rather than the kitchen. In addition, the Tanonas testified that any construction on the south side of the house would also interfere with the house's septic system. Further, the record discloses the Marchands' proposed location for the addition also requires the Tanonas to rip up an existing porch, and does not leave sufficient space for a driveway. Requiring the Tanonas to remove a porch, build a garage on the front of their house, and connect a mudroom to a living room is not a "reasonable alternative" as is suggested by the Marchands. As indicated in Travers, the mere fact that it may be possible to build the addition in another location is irrelevant. 101 R.I. at 513, 225 A.2d at 224. Further, there is no evidence in the record that denying the variance would serve a public interest.
Travers also demonstrates that the denial of a variance may deny a property owner full enjoyment of a permitted use where the property owner would have to erect a structure in a nonsensical location. Id. at 514-515, 225 A.2d at 224-25. InTravers, the denial of the requested variance would have required the garage be placed in the middle of a yard. Id.
Here, the denial of the requested variance would require the Tanonas to place their garage addition in a location that will disrupt the current floorplan of the home, block the home's view, and possibly interfere *Page 11 
with the septic system and leaching field. By analogy toTravers, the denial of the Tanonas' requested variance would deny them full enjoyment of their addition, and, therefore, constitutes more than a mere inconvenience. See id.
 Conclusion
The Board properly granted a dimensional variance to the Tanonas, which allows them to construct an addition to their existing house to include a mudroom and garage with a family room on the second floor. This Court holds that because the Tanonas built the existing home to meet all zoning requirements, and did not deliberately build the home to create a hardship, they did not create their hardship as a matter of law. Additionally, because the denial of the requested variance would deprive the Tanonas of the full enjoyment of a permitted use of their property, it constitutes more than a mere inconvenience. Accordingly, this Court affirms the Board's Decision granting the Tanonas' request for dimensional relief.
Counsel for Appellees shall submit an order within ten days.