DECISION
This is an administrative appeal of the August 25, 2000 decision of the State Labor Board ("Board"). In its decision, the Board found that the University of Rhode Island ("URI") committed unfair labor practices (as delineated in G.L. 1956 §§ 28-7-13(6), (10)) by failing to bargain with the URI Chapter of the American Association of University Professors Union ("AAUP") over the appointment of a librarian in the Pell Marine Science Library and the compensation paid for the appointment. Jurisdiction is pursuant to G.L. §§ 28-7-29 and 42-35-15.
 Facts/Travel of the Case
On May 20, 1999, the Board conducted a hearing to determine if the employer, URI, had committed unfair labor practices. The facts of the dispute, as determined at the hearing, are as follows.
On December 30, 1996, Janice Sieburth, an AAUP member, retired from her position as head librarian of the URI Pell Marine Science Library in Narragansett. On January 2, 1997, Roberta Doran, a non-AAUP member, was appointed to oversee the day-to-day operations of the Pell Library from January 2, 1997 to June 30, 1997. URI, through its interim dean, Michael Vocino, sent a letter to Roberta Doran confirming the assignment and offering her $5,000 in compensation for her extra duties. Vice Provost for Academic Affairs at URI, Blair Lord, testified that when Ms. Sieburth announced her retirement, the Vice Provost for Informational Services determined that a reorganization of the position was necessary. He claimed that a job description for a new position was created and approved. This "new" position, which was eventually filled by Eleanor Hulinger on December 7, 1997, was non-union. He testified that the $5,000 paid to Ms. Doran was merely compensation for the extra administrative duties she undertook in the interim, such as locking doors and supervision, some of which he admitted were the same as Ms. Sieburth's duties. He admitted, however, that no bargaining took place with the AAUP in connection with the reconfiguration of the position vacated by Ms. Sieburth.
AAUP's Executive Director, Ms. Suzanne Taylor, testified that she filed a grievance alleging the employer's refusal to bargain after she wrote Provost Beverly Swan concerning the matter and thereafter met with her in person, but was unable to a reach an agreement. The matter then proceeded through the formal grievance procedure laid out in the collective bargaining agreement ("CBA") of the parties. (AAUP Memorandum, p. 2-3) (The CBA is attached as Appendix.) On or about February 28, 1997, prior to the resolution of the grievance filed with the Commissioner of Higher Education, the AAUP also filed unfair labor practice charges against URI with the Board, asserting that its actions violated certain provisions of the State Labor Relations Act. On April 23, 1997, the Commissioner of Higher Education denied the grievance on the ground that URI had not violated any provision of the CBA.
A hearing was nonetheless held by the Board regarding the unfair labor practice charges on May 20, 1999. At the hearing, the employer, URI, moved to dismiss the complaint on the following three grounds: (1) the case was moot; (2) the case was barred by the "Election of Remedies" doctrine; and (3) the Board lacked jurisdiction to hear the case. The Board denied the motion. After conducting its hearing and considering the parties' post-hearing briefs, the Board determined that URI had refused to bargain collectively with the AAUP as evidenced by URI's actions in unilaterally assigning duties formerly performed by a bargaining unit member to a non-bargaining unit member and in unilaterally setting the compensation package for the assignment. These acts, as determined by the Board, constituted unfair labor practices. "It is an unfair labor practice for an employer: [t]o refuse to bargain collectively with the representatives of employees. . . ." or "[t]o do any acts, other than those already enumerated in this section, which interfere with, restrain or coerce employees in the exercise of the rights guaranteed by § 28-7-12." G.L. §§ 28-7-13(6), (10). The Board ordered URI to negotiate with the AAUP over any other transfers of work assigned to AAUP members in the future, and the Board ordered URI to place a notice with respect to the Board's order in the Pell Marine Science Library and in other locations for thirty (30) days. The Board denied the AAUP's request for money damages in the amount of five thousand dollars ($5,000). On August 25, 2000, the Board entered its decision in favor of the AAUP, determining that URI had failed to bargain with AAUP in violation of G.L. §§28-7-13(6), (10). Thereafter, URI timely appealed the Board's decision to this Court.
 Standard of Review
The review of a Board decision by this Court is controlled by G.L. § 42-35-15(g) which provides for review of a contested agency decision:
 "(g) The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The Court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
(1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of an agency in regard to the credibility of witnesses or the weight of the evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court "must uphold the agency's conclusions when they are supported by any legally competent evidence in the record." Rocha v. State Public Utilities Comm., 694 A.2d 722, 725 (R.I. 1997) (citing Rhode Island Public Telecommunications Authority v. Rhode Island Labor Relations Board, 650 A.2d 479, 485 (R.I. 1994)). This is true even in cases where the Court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, et al. v. Rhode Island Labor Relations Board, et al.,650 A.2d 479, 485 (R.I. 1994).
 Parties' Arguments
URI argues on appeal, as it did before the Board, that the Board lacks jurisdiction, the case is moot, and the complaint is barred by the election-of-remedies doctrine. Additionally, URI argues on appeal that the complaint is barred by res judicata.
URI contends the AAUP elected its remedy when it chose to file a grievance under the CBA. By failing to timely submit the grievance to arbitration following the Commissioner's decision as provided for in the CBA, URI argues the AAUP has waived its right to seek further redress regarding the grievance. URI contends that under the election-of-remedies doctrine, the AAUP is barred from pursuing the matter before the Board on unfair labor practice charges. Generally stated, the doctrine stands for the proposition that "[w]hen parties have bargained for and agreed upon a mechanism for resolving contract disputes, they have no recourse but to pursue the remedy for which they have contracted." Romano v. Mancini, 412 A.2d 1131 (R.I. 1980). See also, Cranston Teachers' Association v. School Committee, 423 A.2d 69 (R.I. 1980) (parties who elect to submit to arbitration for purposes of resolving disputed issues are barred by the election-of-remedies doctrine from seeking redress in the Superior Court.)
According to URI, the application of this doctrine in a higher education context was recognized in Cipolla v. Rhode Island College,742 A.2d 277 (R.I. 1999). In Cipolla, a Rhode Island College employee filed a grievance through his union, alleging that the board[1] had breached its duties under the CBA by not enrolling plaintiff in a private pension program designed for employees who were not members of the State of Rhode Island Employee Retirement System. The grievance was denied, and plaintiff did not proceed to arbitration as he could have done under the CBA. Instead, plaintiff filed a complaint in Superior Court seeking retroactive inclusion in the pension plan for the period in which he was employed by the college but not covered by any retirement program. The defendant filed a motion to dismiss and a motion for summary judgment arguing, in part, that plaintiff's claim was barred by the doctrine of election-of-remedies because he had earlier attempted to resolve the dispute through the contractually agreed-upon grievance procedure. Although the motion to dismiss was denied by the first trial justice, the defendant's motion for summary judgment was granted by a second trial justice. The Supreme Court affirmed, holding that once the plaintiff entered into the grievance procedure, he had selected the remedy to adjudicate his claim. Thus, the Superior Court could not hear his statutory rights claim, which dealt with a term or condition of employment that was also regulated by the CBA, absent evidence that the legislature regarded the statutory right as so important that individuals deserved access to two different forums to enforce it.
In the present case, the Board argues that the Cipolla decision is distinguishable from the case at bar for the following reasons: (1) there was no evidence in the record as to the remedy sought by the AAUP, (2) the jurisdiction of an arbitrator is limited to questions arising under the collective bargaining agreement, not the Rhode Island State Labor Relations Act and the jurisdiction of the Board is limited to questions arising under the Rhode Island State Labor Relations Act and not a collective bargaining agreement, and (3) the power of the Board to prevent unfair labor practices is not affected or impaired by the existence of a grievance procedure in a collective bargaining agreement. The AAUP agrees that the doctrine of election-of-remedies is not applicable here because the Board has "exclusive" jurisdiction to hear unfair labor practice charges pursuant to statute.
 Overlapping Jurisdiction
A grievance under a CBA may arise out of facts that would also constitute an unfair labor practice. The two areas in which this is most likely to occur are unilateral employer actions and employee discipline. See, Julius G. Getman and Bertrand Pogrebin, Labor Relations: The Basic Processes, Law and Practice 199-200 (Harry W. Jones, dir. ed.) (1988). For example, discipline of an employee may constitute both a breach of the CBA as well as a "retaliatory act" in violation of the State Labor Relations Act, G.L. § 28-7-8. Likewise, a unilateral employer action, such as the one in the case at bar could constitute both a breach of the CBA as well as an employer's "failure to bargain" as delineated in G.L. § 28-7-6. When this overlap occurs, the problem arises, as in this case, as to whether the bargained-for forum or the Board should hear the matter or whether both should.
Rhode Island law has not squarely addressed this issue. While there is ample case law as to the jurisdiction of the Superior Court in relation to the Board with regard to unfair labor practices (the Board has exclusive jurisdiction to hear unfair labor practices), there is no precedent specifically addressing the overlap of matters between a CBA forum and the Board. A review of the federal labor law, however, reveals that the National Labor Relations Board ("NLRB") defers its jurisdiction in such cases to the grievance and arbitration procedures laid out in the CBAs. In Spielberg Manufacturing Co., 112 NLRB 139 (1955), the NLRB held it would defer to an arbitration award where (a) the proceedings appear to have been fair and regular; (b) all parties have agreed to be bound; and (c) the arbitrator's decision is not "clearly repugnant" to the policies and purposes of the NLRA. The Board in Ratheon Co. and Reikard, 140 NLRB 883, 884-885 (1963), further conditioned deferral on the arbitrator having considered the unfair labor practice issue. However, as acknowledged by the NLRB in Olin Corp. and Local 8-77, 268 NLRB 573 (1984), the application of the Ratheon requirement has proven elusive. In response, the NLRB determined that
 "an arbitrator has adequately considered the unfair labor practice if (1) the contractual issue is factually parallel to the unfair labor practice issue, and (2) the arbitrator was presented generally with the facts relevant to resolving the unfair labor practice. In this respect, differences, if any, between the contractual and statutory standards of review should be weighed by the Board as part of its determination under the Spielberg standards of whether an award is "clearly repugnant" to the Act. And, with regard to the inquiry into the "clearly repugnant" standard, we would not require an arbitrator's award to be totally consistent with Board precedent. Unless the award is "palpably wrong," i.e., unless the arbitrator's decision is not susceptible to an interpretation consistent with the Act, we will defer. Finally, we would require that the party seeking to have the Board reject deferral and consider the merits of a given case show that the above standards for deferral have not been met. Thus, the party seeking to have the Board ignore the determination of an arbitrator has the burden of affirmatively demonstrating the defects in the arbitral process or award." Id. 268 NLRB at 574.
Since 1971, the NLRB has deferred not only to arbitration awards, but to arbitration procedures as well. Collyer Insulated Wire (NLRB 1971). In Collyer, the Union did not invoke the arbitration clause in the agreement but instead filed a § 8(a)(5) refusal to bargain charge with the NLRB. The NLRB held it would defer to the arbitration procedure even though there was no existing arbitration award. The NLRB did, however, retain its jurisdiction to review the arbitration award to make sure it complied with the Spielberg requirements. In Ray Robinson Chevrolet, 228 NLRB 828 (1977), the Board reaffirmed Collyer in refusal to bargain cases.
In the case at bar, the AAUP decided to file a grievance pursuant to the parties' CBA challenging the assignment of Roberta Doran to the Pell Marine Science Library. The parties' CBA was enforceable for the years 1992-1995 subject to automatic renewal. (CBA, § 29.1) As no notice of termination was given as provided for in the CBA, this contract was binding between the parties for the period in which the dispute arose. The AAUP's grievance resulted in an adverse decision for the AAUP by the Commissioner of Higher Education, who determined URI had not breached any provision of the CBA. As provided for in the parties' CBA, an unresolved grievance at that level "shall, at the request of the Association or the Board,[2] be referred to the American Arbitration Association, in accordance with its rules then obtaining." (CBA, § 24.3, emphasis added.) "All submissions to arbitration must be made within four (4) weeks after the grievance procedure decision. . ." (CBA, § 24.3) The CBA defines the term, "grievance" broadly. A "grievance" is "any difference or dispute with respect to the interpretation, application, or violation of any of the provisions of this Agreement, that shall be presented in writing." (CBA, § 24.1) Prior to the decision of the Commissioner for Higher Education which determined that no breach of contract occurred, however, the AAUP had filed unfair labor practice charges with the Board upon the same facts. Subsequent to the Commissioner's decision in favor of URI, the Board returned its decision finding that URI had committed unfair labor practices. Thus, the end result was that URI, although not found to be in breach of its agreement with the AAUP by the Commissioner, was found to have "failed to bargain" with the AAUP by the Board.
However, "[g]iven the intimate connection between arbitration and negotiation, it is somewhat fictional to conclude in cases involving unilateral action that an employer willing to arbitrate is unwilling to bargain." Labor Relations at 206. A Union may not make additional bargaining demands during the agreement's term over a subject written into the current agreement. The duty to bargain shall not require either party to discuss or agree to a modification of the bargaining agreement's provisions during its terms. See, Labor Relations at 132-133. It remains unclear from the record whether the Commissioner found that the appointment of Roberta Doran involved a term of the CBA that the employer, URI, did not breach, or whether the appointment was found to be outside the terms of the agreement. If outside the terms of the agreement, an issue arises as to whether the parties raised this issue during negotiations and, decidedly, it was not put into the agreement, or whether the issue was never raised by the parties and thus open to negotiation. "Unilateral action by an employer might . . . [be a failure to bargain], either because the contract does not deal with the matter, or because the contract prohibits the employer from taking such action and his doing so therefore constitutes a "modification" of the contract. . . ." Labor Relations at 133-134. This Court believes that issues of this nature are best left to the expertise of a labor law arbitrator who reviews the overall contract obligations of the CBA.
From its review of the record before it, this Court finds that the Board erred when it heard the unfair labor practice charges that were factually parallel to the grievance pending before the Commissioner. Absent contrary precedent, this Court finds that the federal law is persuasive. In cases where the facts surrounding a unilateral employer action give rise to both a grievance under the CBA and an unfair labor practice charge, it is preferable for the Board to defer its jurisdiction to the grievance and arbitration procedure established in the CBA, upon the terms for which both parties bargained and agreed. The Board shall retain its jurisdiction, however, to review the award to determine if the Spielberg and Ratheon requirements have been met. This holding is consistent with Rhode Island's long recognition of the value and validity of arbitration awards. § 28-9-1 et seq. Although the Board is empowered and directed by statute to prevent an employer from engaging in any unfair labor practice (§ 10 28-7-20), the Rhode Island legislature has also recognized that parties may contract for arbitration of their grievances. § 28-9-1 et seq. Additionally, neither the Board nor any of its agents or employees shall engage in any effort to mediate, conciliate, or arbitrate any labor dispute. § 28-7-10. Given the context in which this "failure to bargain" charge was raised, this Court does not find that the legislature regarded the statutory right as so important that individuals deserved access to two different forums to enforce it. See, Cipolla, supra.
With this in mind, this Court holds that it is in keeping with the General Laws of Rhode Island to require the Board to defer its jurisdiction in order for the arbitrator or grievance officer to conduct fact finding and resolve the dispute, as bargained for by the parties, where the unfair labor practice is "factually parallel" to the grievance (i.e. unilateral employer actions and employee discipline.) The power provided the Board to prevent an employer from engaging in any unfair labor practice is secured by the Board's retention of its jurisdiction to review the arbitration award and make sure the Spielberg and Ratheon requirements are met. In the event they are not met, the Board can vacate the award at that time. "The economic necessity for employees to possess . . . actual liberty of contract, and bargaining power equal to that of their employers . . . has long been sanctioned by public opinion, and recognized and affirmed by the legislature and the highest courts." § 28-7-2 (Emphasis added.) The Rhode Island Supreme Court wrote:
 "[a]rbitration is a contractual matter agreed upon by the parties in their collective bargaining contract. Resolution of the issues of whether a party must submit to arbitration and which issues it must arbitrate under the terms of the contract are properly within the jurisdiction of a court. In determining the arbitrability of a dispute, however, the [U.S.] Supreme Court, in the famous Steelworkers' Trilogy, has held that a court shall rule in favor of submitting the dispute to arbitration unless the arbitration clause of the collective bargaining agreement cannot be interpreted to include the asserted dispute, and that all doubts should be resolved in favor of arbitration. . . [T]his power vested in the courts to decide whether the subject of the dispute is arbitrable within the agreement to arbitrate does not[, however,] encompass judicial resolution of the merits of the dispute." School Committee of the City of Pawtucket v. Pawtucket Teachers Alliance, 120 R.I. 810, 815, 390 A.2d 386, 389 (1978).
After review of the entire record, this Court determines the dispute between the parties was substantively arbitrable. The CBA provides that a "grievance" (which is broadly defined) "shall" be submitted to arbitration. This Court therefore reverses the order of the Board which was affected by error of law and constituted an abuse of discretion. The Board's complaint is dismissed. This Court declines to address the merit of URI's argument that the AAUP waived its right to submit the matter to arbitration by failing to timely submit it. This question is a procedural arbitrability issue for an arbitrator to decide and thus outside this Court's jurisdiction. Id., 120 R.I. at 817. As the decision of the Board is reversed on this ground, this Court does not reach URI's other arguments.
Counsel shall submit an appropriate order for entry after notice.
[1] The "board" in this context refers to the Board of Governors for Higher Education.
[2] The Board in this context refers to the Board of Governors for Higher Education.