**POLYTOP CORPORATION**

v.

**CHIPSCO, INC.**

No. 2002–194–Appeal.

Supreme Court of Rhode Island.

May 22, 2003.

Robert M. Duffy/Christine K. Ahern, Providence, for Plaintiff.

David L. Hotchkiss/Russell L. Schetroma/Nancy Giorgi, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

### OPINION

PER CURIAM.

This case came before the Supreme Court on March 31, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing argument of counsel and

reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide this appeal at this time.

The plaintiff, Polytop Corporation (plaintiff or Polytop), appeals from a Superior Court order in favor of defendant, Chipsco, Inc. (defendant or Chipsco), granting Chipsco's motion to stay the Superior Court proceedings and directing the parties to proceed to arbitration of this dispute. Polytop is a manufacturer of molded dispensing closures for use on plastic squeeze bottles. Chipsco manufactures and sells injection molds. In January 1999, Chipsco presented to Polytop a quotation for a specific mold; three weeks later Polytop issued a purchase order for that item.[1] The plaintiff ordered a second type of mold in August 1999 based upon an April 1, 1999 quote by defendant. The language contained in Chipsco's quotations and Polytop's responding purchase orders has given rise to this dispute.

Believing that both molds were delivered late and were of poor quality, Polytop brought this action in Superior Court, seeking damages as a result of Chipsco's alleged breach of contract. Chipsco, contending that the contract included an agreement to resolve contract disputes through arbitration, filed a motion to stay the proceedings and to refer the dispute to arbitration. According to Chipsco, each quotation contained an arbitration provision that, upon acceptance by Polytop, was conclusive on the issue of dispute resolution. Contained in Chipsco's quotation, under the heading "Terms and Conditions," was a provision requiring arbitration of all contract disputes. Polytop disagreed that this provision was a part of the contract between the parties because its purchase orders included the following:

"Please enter our order for the following subject to the terms and conditions below and attached hereto and made a part hereof. Any additional or different terms proposed by seller are rejected unless expressly assented to in writing by buyer's authorized agent."

In his decision ordering a stay of the Superior Court proceedings and directing the parties to proceed to arbitration, the hearing justice concluded that the language in Polytop's purchase order that "[a]ny additional or different terms proposed by seller are rejected unless expressly assented to in writing by buyer's authorized agent[,]" applied to any terms or conditions the seller may seek to impose in the future. He concluded that the import of this language is controlled by G.L. 1956 § 6A–2–207(2) of the Rhode Island Uniform Commercial Code, which, between merchants, allows the additional terms to become part of the contract unless "(a) [t]he offer expressly limits acceptance to the terms of the offer [or] (b) [t]hey materially alter it[.]" Finding that Chipsco's offer did not limit acceptance to its terms nor did Polytop's acceptance materially alter the original terms of the contract, the trial justice concluded that arbitration of contract disputes was in fact agreed upon by the parties. He granted defendant's motion to stay the proceedings and ordered arbitration of this dispute.

On appeal, plaintiff argues that the trial justice erred in finding an agreement to arbitrate. Polytop asserts that it did not agree to arbitration with Chipsco and that its acceptance of Chipsco's offer amounted to a rejection of the arbitration provision in defendant's quotation. The plaintiff contends that, "[n]o one is under a duty to arbitrate unless with clear language he [or she] has agreed to do so," *Bush v. Nationwide Mutual Insurance Co.*, 448 A.2d 782,

---

**1.** The facts are gleaned from the pleadings and argument before the hearing justice.

784 (R.I.1982), and, by the general rejection clause in its purchase order, Polytop expressly rejected the arbitration provision and all other contradictory provisions contained in Chipsco's quotation.

The defendant argues that a finding that the parties agreed to submit their disputes to arbitration depends upon the contract that was formed by the exchange of quotations and purchase orders and whether a valid arbitration provision is contained in the contract. The defendant cites § 6A–2–207 of the Rhode Island Uniform Commercial Code entitled, "Additional terms in acceptance or confirmation," as the controlling authority in this case. Section 6A–2–207, provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of title 6A.

It is the law in this jurisdiction that a person may waive his or her right to have the courts adjudicate a contract dispute, but "there can be no waiver in the absence of an agreement signifying [his or her] assent." *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir.1994). This Court previously has held that a finding that contracting parties have agreed to substitute arbitration for adjudication must rest on clear contract language as evidence of definite intent to do so. An examination of the documents that comprise the agreement of the parties must demonstrate evidence of mutual assent to arbitration. *Stanley–Bostitch, Inc. v. Regenerative Environmental Equipment Co.*, 697 A.2d 323, 326 (R.I.1997).

Under the common law "mirror image" rule, "an invoice from the seller containing terms materially different from those in the buyer's offer would be considered a mere counteroffer," and not an acceptance of the offer or the formation of a contract. *JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 53 (1st Cir.1999) (per curiam). The Uniform Commercial Code, specifically U.C.C. § 2–207, restricted application of this "mirror image" rule to certain limited circumstances in which the offer or acceptance was expressly conditioned upon acceptance of additional or different terms. *Id.*

Before this Court, plaintiff argues that its acceptance of Chipsco's proposal expressly was made conditional by the provision in its purchase order requiring that any additional or different terms proposed by the seller would be rejected unless accepted in writing by its agent. Polytop argues that arbitration is purely a matter of contract and that "a party cannot be

required to submit to arbitration any dispute which he [or she] has not agreed so to submit[.]" *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960). Polytop urges this Court to conclude that by expressly requiring seller's assent to any additional terms to its purchase order, it rejected the arbitration provision set forth in Chipsco's proposal.

To support its argument that its acceptance was conditional, plaintiff cites *Commerce & Industry Insurance Co. v. Bayer Corp.,* 433 Mass. 388, 742 N.E.2d 567 (2001). That case presented the unique circumstance in which the defendant, Bayer Corporation (Bayer), sought the enforcement of an arbitration provision contained in the plaintiff's purchase order. The plaintiff, Malden Mills Industries Inc. (Malden Mills), had purchased bulk nylon fiber from Bayer that was alleged to have caused a catastrophic fire at Malden Mills's manufacturing facility. Malden Mills initiated purchase of the material from Bayer by a purchase order that included, on the reverse side, an arbitration provision and language providing that the purchase order represented the entire agreement of the parties notwithstanding any communication from seller and that the document cannot be modified except in writing and signed by plaintiff's representative. The defendant sent Malden Mills an invoice that indicated that Malden Mills's order was accepted but subject to the terms and conditions on the reverse side of Bayer's invoice, including a provision that acceptance of any order by plaintiff " 'is expressly conditioned on [Malden Mills's] assent to any additional or conflicting terms contained herein.' " *Id.* at 570. When the defendant sought to enforce the arbitration provision in plaintiff's purchase order, Malden Mills responded that an agreement to arbitrate was never reached

by the parties. The Massachusetts Supreme Judicial Court agreed and determined that, pursuant to Mass. Gen. Laws Ann. ch. 106, § 2–207(3), a contract arose from the parties' conduct and not in accordance with the provisions of § 2–207(1). *Commerce & Industry Insurance Co.,* 742 N.E.2d at 572. The Court concluded that Bayer's acceptance of Malden Mills's offer was expressly conditioned on Malden Mills's assent to its additional terms and Malden Mills never communicated its acceptance of any of the terms contained in Bayer's invoices. Further, Malden Mills specifically limited Bayer's acceptance to the terms of its purchase order and expressly provided that the terms contained in its offer could not be modified except in writing signed by an authorized representative. *Id.* Thus, finding that no agreement was reached by the writings of the parties, the Court looked to the conduct of the parties and concluded a contract was formed under § 2–207(3). In such an instance, the terms of the contract are determined exclusively by the language of subsection (3): " 'those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of [title 6A].' " *Commerce & Industry Insurance Co.,* 742 N.E.2d at 573.

The case before this Court is inapposite to the facts in *Commerce & Industry Insurance Co.* Polytop received an offer from Chipsco that included an arbitration provision and, although Polytop contends that it rejected the arbitration clause by including its own terms and conditions in its acceptance, Polytop failed, in accordance with § 6A–2–207(1) to condition its acceptance on Chipsco's assent to the additional or different terms contained in its purchase order. Although Polytop's purchase order indicated that any *additional* terms proposed by

the seller would be rejected unless expressly agreed to by the buyer, Polytop's acceptance was unconditional. Further, Polytop's acceptance was silent on the issue of dispute resolution and therefore did not materially alter the terms of the original proposal. *See* § 6A–2–207(2)(b). We are of the opinion that by the exchange of quotations and purchase orders between the parties, a contract was formed pursuant to § 6A–2–207(1). Polytop's acceptance of Chipsco's quotations, without expressly requiring that Chipsco accept its different or additional terms, amounted to the formation of a contract that included an arbitration provision. The additional or different terms in Polytop's purchase order did not materially alter the agreement and, because the parties are merchants, these terms became part of the contract.

Because we are satisfied that the writings of the parties led to the formation of a contract, we reject plaintiff's contention that the terms of the contract should be controlled by the provisions of § 6A–2–207(3). We are satisfied that the writings exchanged by the parties, including Chipsco's quotations and Polytop's purchase orders, resulted in an enforceable contract and that resorting to an examination of the conduct of the parties to determine the existence of a contract and/or its terms is not necessary. Section 6A–2–207(3) is applicable only in situations in which no contract is formed by the exchange of offer and acceptance, clearly not the case before this Court.

Accordingly, for the reason stated herein, the plaintiff's appeal is denied and dismissed. The judgment is affirmed and the case is remanded to the Superior Court.