**Supreme Court**

No. 2012-356-Appeal.
(PC 11-5663)

Reynalda Weeks                    :

v.                                :

735 Putnam Pike Operations, LLC d/b/a    :
    Greenville Skilled Nursing and
        Rehabilitation.

NOTICE:    This opinion is subject to formal revision before
publication in the Rhode Island Reporter.  Readers are requested to
notify the Opinion Analyst, Supreme Court of Rhode Island, 250
Benefit Street, Providence, Rhode Island 02903, at Telephone 222-
3258 of any typographical or other formal errors in order that
corrections may be made before the opinion is published.

Reynalda Weeks          :

v.                      :

735 Putnam Pike Operations, LLC d/b/a    :
    Greenville Skilled Nursing and
      Rehabilitation.


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The plaintiff, Reynalda Weeks, appeals from an order

of the Providence County Superior Court entered on January 30, 2012, staying her civil action in

that court and ordering that the "matter * * * be resolved through binding arbitration as required

by the governing Collective Bargaining Agreement between the parties."  This case came before

the Supreme Court pursuant to an order directing the parties to appear and show cause why the

issues raised in this appeal should not be summarily decided.  After a close review of the record

and careful consideration of the parties' arguments (both written and oral),[1] we are satisfied that

cause has not been shown and that this appeal may be decided at this time.  For the reasons set

forth in this opinion, we vacate the order of the Superior Court.

---

[1]    In addition to our perusal of the briefs of the parties, we have also given due
consideration to the points made by the Rhode Island Commission for Human Rights in its
amicus curiae brief.

# I

## Facts and Travel

On September 30, 2011, plaintiff filed a complaint in Superior Court seeking damages as well as equitable and declaratory relief for alleged violations of the Rhode Island Civil Rights Act (RICRA) (codified in G.L. 1956 §§ 42-112-1 to -2) and the Rhode Island Fair Employment Practices Act (FEPA) (codified in G.L. 1956 §§ 28-5-1 to -42).[2] The defendant, 735 Putnam Pike Operations, LLC d/b/a Greenville Skilled Nursing and Rehabilitation, is plaintiff's former employer. In her complaint, plaintiff describes herself as being a "black" female and she alleges that during her employment by defendant she was subjected to a "hostile work environment" on account of her "race and color" stemming from what she characterized as "derogatory and disparate treatment" by her supervisor. She further alleges that she was "constructively terminated" on July 18, 2010.[3]

The defendant responded to plaintiff's complaint by filing a "Motion to Stay Proceedings" arguing that the "proper forum for resolution of the [p]laintiff's employment discrimination and wrongful termination claim [was] binding arbitration." On January 19, 2012, a hearing was held in the Superior Court on defendant's motion to stay, during which plaintiff conceded that she was a "member of the union" and was subject to the collective bargaining agreement (CBA) between the union and defendant until the time of her alleged "constructive[]

---

[2] The FEPA and the RICRA prohibit employment discrimination based on, among other things, race and color. See G.L. 1956 § 28-5-7; G.L. 1956 § 42-112-1.

[3] The plaintiff alleges in her complaint that she timely filed a charge of discrimination with the Rhode Island Commission for Human Rights and thereafter was issued a "Notice of Right to Sue."

terminat[ion]."[4]  An order was subsequently entered on January 30, 2012, in which the hearing justice granted defendant's motion to stay and ordered that the "matter * * * be resolved through binding arbitration as required by the governing Collective Bargaining Agreement between the parties."  It is that order which is the subject of plaintiff's appeal.

## II

### Issue on Appeal

On appeal, plaintiff contends that the hearing justice erred when she granted defendant's motion to stay and ordered the parties to resolve their dispute through binding arbitration. According to plaintiff, the hearing justice's decision was in error because the CBA's arbitration provision does not preclude plaintiff from asserting her statutorily created rights (under the RICRA and the FEPA) in a judicial forum.

## III

### Analysis

### A

### Appeal of the Superior Court Order

The defendant initially argues that, because the hearing justice's order granting its motion to stay was not a final order, plaintiff does not have what it terms "an Appeal as of Right" to this Court.  As defendant correctly points out, a party may petition this Court for a writ of certiorari in order to seek appellate review of a decision which is not final (i.e., an interlocutory decision). See, e.g., In re Joseph J., 465 A.2d 150, 151 (R.I. 1983).  The plaintiff in the instant case did not petition this Court for a writ of certiorari, but rather filed a direct appeal from the hearing

---

[4]  For the purpose of addressing the issue presently before us, we need delve no further into the events which gave rise to the substantive allegations in plaintiff's complaint.

justice's interlocutory order granting defendant's motion to stay. Consequently, defendant argues, plaintiff's appeal must be dismissed.[5]

The defendant cites McAuslan v. McAuslan, 34 R.I. 462, 83 A. 837 (1912) for the principle that "a decree must be final to be appealable as of right."[6] We are in agreement with defendant that, as a general rule, appeals from interlocutory orders are not permitted. See Boranian v. Richer, 983 A.2d 834, 837 (R.I. 2009). However, that rule is not absolute. See id. In this jurisdiction, interlocutory appeals are permitted if they fall within one of two exceptions. Id.

The first exception is statutory: pursuant to G.L. 1956 § 9-24-7, a party may appeal certain interlocutory orders. However, as defendant accurately points out, an appeal from a motion to stay, as is presented in the instant case, is not one of the specifically enumerated interlocutory orders from which § 9-24-7 permits an appeal.[7]

---

[5] The plaintiff does not make any direct argument in her statement filed pursuant to Article I, Rule 12(A) of the Supreme Court Rules of Appellate Procedure regarding whether she was entitled to bring her appeal directly, rather than being required to petition for a writ of certiorari. She simply states that she filed a notice of appeal pursuant to Polytop Corp. v. Chipsco, Inc., 826 A.2d 945 (R.I. 2003). In Polytop Corp., as is true with respect to the instant case, the plaintiff appealed from a trial justice's order granting the defendant's motion to stay and ordering the parties to arbitrate. Id. at 946. However, the decision in Polytop Corp. does not specifically discuss the procedural route through which the appeal was presented to this Court and, therefore, is not instructive on that issue.

[6] The defendant further relies on Bjartmarz v. Pinnacle Real Estate Tax Service, 771 A.2d 124 (R.I. 2001). In Bjartmarz, this Court was confronted with an appeal of a motion to stay which arrived in this Court by means of a writ of certiorari. Id. at 126-28. This Court's decision in Bjartmarz does not specifically address whether petitioning for a writ of certiorari was the appropriate procedural method of presenting the case to this Court. Id. Consequently, Bjartmarz, like the Polytop Corp. decision cited by plaintiff, is not instructive.

[7] An appeal of an interlocutory order is permitted to be taken, under G.L. 1956 § 9-24-7, "in like manner as from a final judgment" when "an injunction shall be granted or continued, or a receiver appointed, or a sale of real or personal property ordered * * * ." See also Boranian v. Richer, 983 A.2d 834, 837 (R.I. 2009).

- 4 -

The second exception is "judicial in origin." Boranian, 983 A.2d at 837. In McAuslan, this Court announced a rule, which "has been reiterated innumerable times since," permitting appellate review of "an order or decree which, although in a strict sense interlocutory, does possess such an element of finality that action is called for before the case is finally terminated in order to prevent clearly imminent and irreparable harm." Town of Lincoln v. Cournoyer, 118 R.I. 644, 648-49, 375 A.2d 410, 412-13 (1977) (citing McAuslan, supra). If this Court deems the appeal appropriate under McAuslan then we will treat it as a final order.

In Boranian, 983 A.2d at 837, we dealt specifically with an issue involving arbitration, and we stated that, "when an arbitrator's jurisdiction is in question, a Superior Court order compelling arbitration has an element of finality that may be heard on appeal." Our decision in Boranian was consistent with our earlier decision in Forte Brothers, Inc. v. State Department of Transportation, 541 A.2d 1194, 1196 (R.I. 1988), in which we stated:

> "We consider that an order [compelling] arbitration [of contract disputes] has sufficient elements of finality * * * so that appellate review is called for before the case is finally terminated. In these days of significant trial delay, an order that requires a party to go forward with arbitration should be tested in this court upon the application of the objecting party before requiring the case to be fully litigated in a tribunal whose jurisdiction has been challenged."

We perceive no material difference between what is at issue in the instant case and the principles relied upon in Boranian and Forte Brothers. Accordingly, plaintiff's appeal from the trial justice's order granting defendant's motion to stay is proper. Consequently, we shall now address the substantive issues raised by plaintiff.

**B**

**The Standard of Review**

We have consistently held that "whether a dispute is arbitrable is a question of law that this Court reviews <u>de novo</u>."[8] <u>State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers</u>, 866 A.2d 1241, 1247 (R.I. 2005); <u>see also</u> <u>Providence School Board v. Providence Teachers Union, Local 958, AFT, AFL-CIO</u>, 68 A.3d 505, 508 (R.I. 2013); <u>Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co.</u>, 697 A.2d 323, 325 (R.I. 1997); <u>cf.</u> <u>DeFontes v. Dell, Inc.</u>, 984 A.2d 1061, 1066 (R.I. 2009) ("We review the trial court's denial of a motion to compel arbitration <u>de novo</u>."). We are cognizant of the fact that the case before us differs from the usual case concerning arbitrability, where our role is to decide whether the parties contractually agreed to have the dispute at issue resolved by arbitration. Here, by contrast, the issue is whether the arbitral process should not occur because plaintiff has opted for a judicial forum. Nevertheless, there is such a conceptual similarity between the two types of cases that we are entirely comfortable in relying on traditional arbitrability principles as we begin our analysis of the issues before us.

When evaluating competing contentions about arbitrability, "we bear in mind that [a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any

---

[8] Notably, we apply a "more searching standard of judicial review [with respect to] the issue of arbitrability than our limited review of [a] substantive arbitration award." <u>State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers</u>, 866 A.2d 1241, 1247 (R.I. 2005).

The defendant contends that this Court should employ an abuse of discretion standard of review in this case because we are reviewing an interlocutory order; plaintiff has chosen not to address which standard of review should apply. In support of its contention defendant cites <u>New England Stone, LLC v. Conte</u>, 962 A.2d 30 (R.I. 2009). However, the decision in <u>New England Stone</u> calls for the abuse of discretion standard of review to be employed with respect to the issuance of a preliminary injunction; it does not discuss the standard of review to be applied to appeals from interlocutory orders generally. <u>Id.</u> at 32. Such review is controlled by the subject matter of the order and not by its interlocutory nature.

dispute which it has not agreed so to submit." AVCORR Management, LLC v. Central Falls Detention Facility Corp., 41 A.3d 1007, 1010 (R.I. 2012) (internal quotation marks omitted). Consequently, "[a] duty to arbitrate a dispute arises only when a party agrees to arbitration in clear and unequivocal language; and, even then, the party is only obligated to arbitrate issues that it explicitly agreed to arbitrate." State Department of Corrections, 866 A.2d at 1247.

## C

### Arbitration

The plaintiff contends that the hearing justice erred in determining that she must submit her claim to binding arbitration under the CBA; she argues that she cannot be said to have waived her right to a judicial forum to enforce her statutorily created employment rights conferred by the RICRA and the FEPA. Specifically, she argues that the provisions in the CBA at issue in this case are materially different from those deemed to have constituted such a waiver of a judicial forum in the leading United States Supreme Court case relied on by defendant, 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009). Instead, plaintiff relies heavily on earlier decisions of the Supreme Court in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), and Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998), to support her argument that she did not "clear[ly] and unmistak[ably]" waive her statutorily created right to a judicial forum.

The defendant counters that the hearing justice properly applied 14 Penn Plaza, and it points out that the instant case is distinguishable from the several cases cited by plaintiff because plaintiff's claims arise under state rather than federal law—even though, ironically, defendant itself relies on federal case law. The defendant adds that the hearing justice properly found that the CBA informed plaintiff of her agreement to arbitrate and was controlling. It further posits

that Rhode Island has "recognized that a union and an employer may agree that statutory claims must be resolved through grievance procedures."

The hearing justice, when granting defendant's motion to stay, stated that she was "mindful" of 14 Penn Plaza; she proceeded to reason that the provisions of the CBA were "clear and unambiguous" and "explicitly informed the plaintiff of the agreement to arbitrate;" therefore, according to the hearing justice, the arbitration provision of the CBA was "controlling."

Before addressing the federal case law referenced by the parties and the hearing justice, we turn first to our own case law for instruction. We have held that "[n]o one is under a duty to arbitrate unless with clear language he [or she] has agreed to do so," Providence School Board, 68 A.3d at 509 (internal quotation marks omitted), and, consequently, "a finding that contracting parties have agreed to substitute arbitration for adjudication must rest on clear contract language as evidence of definite intent to do so." Polytop Corp. v. Chipsco, Inc., 826 A.2d 945, 947 (R.I. 2003). An examination of a collective bargaining agreement "must demonstrate evidence of mutual assent to arbitration." Id.; see also Blackstone Valley Gas & Electric Co. v. Rhode Island Power Transmission Co., 64 R.I. 204, 223, 12 A.2d 739, 749 (1940) ("The arbitrator derives his jurisdiction from a mutual agreement of the parties to submit the matter to arbitration."). Accordingly, we must begin our analysis of the arbitrability of plaintiff's employment discrimination claims by looking directly at the language of the CBA to which plaintiff and defendant were both parties. See State Department of Corrections, 866 A.2d at 1247 ("Arbitration is a creature of the contract between the parties * * * ."); Bush v. Nationwide Mutual Insurance Co., 448 A.2d 782, 784 (R.I. 1982) ("[A] party is bound only to arbitrate those issues that he has consented to arbitrate.").

At the outset we are confronted with the reality that the CBA at issue in the instant case does contain an anti-discrimination clause in Article 4 which is entitled "**NO DISCRIMINATION**" and provides as follows:

> "Neither the Employer nor the Union shall discriminate against or in favor of any Employee on account of race, color, creed, national origin, sex, sexual preference, age, mental disability, physical disability, or activity with respect to the Union."

Alleged violations of the just-quoted provision may be grieved as provided in Article 23 of the CBA, which provides in pertinent part as follows:

> "The purpose of this Article is to establish a procedure for the settlement of grievances which involve the interpretation and application of a specific provision of this Agreement. A grievance shall mean a complaint by an Employee that as to him/her the Employer has interpreted and applied this Agreement in violation of a specific provision hereof. All such grievances will be handled as provided in this Article."

Section 4 of Article 24, which addresses arbitration, reads in relevant part as follows:

> "The arbitrator shall have jurisdiction only over disputes arising out of grievances as defined in [Article 23 of the CBA] and he/she shall have no power to add to, subtract from, or modify in any way any of the terms of this Agreement."

The language in the CBA does not contain any express reference to the rights of an employee under the RICRA and the FEPA, which certainly provides a predicate for a non-frivolous argument that there is no clear indication in the CBA of a mutual agreement to arbitrate such claims. See Providence School Board, 68 A.3d at 509; Polytop Corp., 826 A.2d at 947. However, the CBA does contain language which prohibits discrimination based on "race" or "color," which would seemingly cover plaintiff's claims in the instant case. Consequently, the language of the CBA alone is not determinative, and we are left with the following question: What language must be present in a CBA to constitute a waiver by an employee of the right to

raise employment discrimination claims under Rhode Island law (specifically the RICRA and the FEPA) in a judicial forum?

In answering the above question, our application of the doctrine of election of remedies in circumstances similar to the instant case provides some helpful contextual guidance. The doctrine of election of remedies "is one that is grounded in equity and is designed to mitigate unfairness to both parties by preventing double redress for a single wrong." State Department of Environmental Management v. State Labor Relations Board, 799 A.2d 274, 277 (R.I. 2002). We have held that, when grievance procedures in a CBA have been invoked, the individual or organization pursuing the grievance is "barred from subsequently seeking redress in the Superior Court." Id.; see Cranston Teachers' Association v. Cranston School Committee, 423 A.2d 69, 70-71 (R.I. 1980) (holding that, since the teachers' association seeking to recover back pay withheld during a wage freeze had utilized the grievance process referenced in the CBA, it had elected its remedy and could not bring its claim in Superior Court); see also Rhode Island Employment Security Alliance, Local 401, S.E.I.U., AFL-CIO v. State Department of Employment and Training, 788 A.2d 465, 466-68 (R.I. 2002); City of Pawtucket v. Pawtucket Lodge No. 4, Fraternal Order of Police, 545 A.2d 499, 500, 503 (R.I. 1988).

Our decision in Cipolla v. Rhode Island College, Board of Governors for Higher Education, 742 A.2d 277 (R.I. 1999) is particularly instructive. In that case, the plaintiff, an employee of Rhode Island College, filed a grievance alleging that he was not enrolled in TIAA-CREF (a private pension program in which state employees participate) on the correct date, in breach of the pertinent collective bargaining agreement. Id. at 279. His grievance was denied, and he did not proceed to arbitration as he had a right to do under the collective bargaining agreement between the parties. Id. Instead, he filed a claim in Superior Court. Id. This Court

upheld the Superior Court's decision granting the defendant's motion for summary judgment and ruled that the case "fit[] squarely" within the election of remedies doctrine; we further stated that, "when one party to a CBA attempts to take advantage of the grievance procedure and loses, the election of remedies doctrine prohibits that party from pursuing the same dispute in the courts of this state." Id. at 281 (citing City of Pawtucket, 545 A.2d at 502-03).

Unlike the situation at issue in Cipolla, it is clear in the instant case that, if plaintiff availed herself at all of the grievance procedure available under the CBA, she did so only with respect to the very preliminary steps in the grievance procedure.[9] Consequently, the doctrine of election of remedies, as applied in our decision in Cipolla, is not applicable; however Cipolla remains instructive because the plaintiff in Cipolla, like plaintiff in the instant case, relied on Gardner-Denver and Wright. See Cipolla, 742 A.2d at 281. In our opinion in Cipolla, we concluded that those two decisions of the United States Supreme Court had "no precedential effect" because the Supreme Court was addressing the rights of employees under federal statutes whereas Cipolla involved an issue "purely of state law." Id. at 281, 282. Importantly, in our opinion in Cipolla, we further stated as follows:

> "Even if we consider Wright and Gardner-Denver for their persuasive value, we do not believe that the rule of these cases should be applied to the case at bar. As we have noted, Wright and Gardner-Denver dealt with important federal antidiscrimination statutes. The Supreme Court noted that there were overwhelming public policy reasons for preserving access to the judicial forum for consideration of civil rights claims. Gardner-Denver, 415 U.S. at 47-49 * * * . The same concerns are simply not present in this case. The statutory right that the plaintiff attempted to redeem dealt

---

[9] There is a dispute between the parties regarding whether a grievance was filed by plaintiff and regarding whose responsibility it would have been to see to it that such a grievance was pursued. However, the parties do not contest that, if a grievance was indeed filed, it never progressed even to Step Two of the grievance procedure as prescribed in Article 23, section 1 of the CBA. (In Step Two a grievance is "reduced to writing, signed by the grievant and his/her Union representative, and presented to the Administrator of the facility or his/her designee.")

only with a term or condition of employment that also apparently was regulated by the CBA. There is no evidence that the Legislature regarded that right as being so important that individuals should have access to two different forums to enforce it. Once the plaintiff entered the grievance procedure, he had selected the remedy to adjudicate his claim, and he should have pursued that remedy to its conclusion." Cipolla, 742 A.2d at 282.

After a detailed review of the facts and travel of the instant case and after careful consideration of the state statutes under which plaintiff seeks to litigate her claim, it is clear that we are now confronted with precisely the type of situation which we said in Cipolla was not involved there—namely, a case premised on antidiscrimination statutes (the RICRA and the FEPA) concerning which there are important reasons of public policy that militate in favor of preserving the right of access to a judicial forum absent a very specific waiver of that right.[10] Consequently, while 14 Penn Plaza, Wright, and Gardner-Denver lack precedential effect

[10]    In 1949, the General Assembly passed the FEPA in order to "assure equal employment opportunities for all persons by eliminating discriminatory practices." Folan v. State Department of Children, Youth, and Families, 723 A.2d 287, 290 (R.I. 1999). Section 28-5-2 specifically states as follows with respect to the discrimination which the FEPA was passed to counteract:

> "Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the state, and undermines the foundations of a free democratic state. The denial of equal employment opportunities because of such discrimination and the consequent failure to utilize the productive capacities of individuals to their fullest extent deprive large segments of the population of the state of earnings necessary to maintain decent standards of living, necessitates their resort to public relief, and intensifies group conflicts, thereby resulting in grave injury to the public safety, health, and welfare."

Subsequently, in 1990, the General Assembly passed the RICRA in order to provide "broad protection against all forms of discrimination in all phases of employment." Horn v. Southern Union Co., 927 A.2d 292, 293 (R.I. 2007) (internal quotation marks omitted). As we have remarked in the past, the FEPA and the RICRA "enforce the rights of the public and implement a public policy that the [L]egislature considered to be of major importance." Folan, 723 A.2d at 291, 292 (internal quotation marks omitted) (reiterating that the public policy underlying the RICRA and the FEPA is a "broad, fundamental public policy which fulfills paramount purposes").

because they address federal law, we respectfully consider the potentially persuasive value of the Supreme Court's reasoning therein as we grapple with the question of what language is required in a collective bargaining agreement for an employee who alleges employment discrimination to be deemed to have waived his or her access to the judicial forum for those claims.[11]

In Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), the plaintiff brought an action under Title VII of the Civil Rights Act of 1964 (codified in 42 U.S.C. §§ 2000e to 2000e-17), and the Supreme Court was tasked with deciding "under what circumstances, if any, an employee's statutory right to a trial de novo under Title VII may be foreclosed by prior submission of his claim to final arbitration under the nondiscrimination clause of a collective-bargaining agreement."[12] Gardner-Denver, 415 U.S. at 38. The collective bargaining agreement at issue stated that "[n]o employee will be discharged, suspended or given a written warning notice except for just cause," and it "contained a broad arbitration clause covering differences aris[ing] between the Company and the Union as to the meaning and application of the provisions of [the collective bargaining agreement] and any trouble arising in the plant." Id. at 39-40 (internal quotation marks omitted). The Supreme Court observed that both the federal District Court and the Court of Appeals which had considered the issue "evidently thought that [the result in the case at bar] was dictated by notions of election of remedies and waiver and by the federal policy favoring arbitration of labor disputes * * * ." Id. at 45-46. However, the Court

---

[11]    This Court has historically looked to federal precedent for some degree of enlightenment and guidance when we are engaged in the process of construing our state employment discrimination statutes. See, e.g., Shoucair v. Brown University, 917 A.2d 418, 426 (R.I. 2007); Casey v. Town of Portsmouth, 861 A.2d 1032, 1036 (R.I. 2004).

[12]    We note that the plaintiff's grievance in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), had gone through the arbitration process without success; the arbitrator ruled that the plaintiff was "discharged for just cause" and, thus, the collective bargaining agreement was not violated. Id. at 42 (internal quotation marks omitted).

disagreed with that conclusion; it stated that the doctrine of election of remedies had "no application" in the context of the case because submitting a grievance to arbitration vindicated a contractual right whereas filing a lawsuit asserted an "independent statutory right[]." Id. at 49-50; see also Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 737 (1981) ("While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.").

Finding that "in enacting Title VII, Congress had granted individual employees a nonwaivable, public law right to equal employment opportunities that was separate and distinct from rights created through * * * collective bargaining," Barrentine, 450 U.S. at 737-38, the Supreme Court held that an employee "does not forfeit his right to a judicial forum for claimed discriminatory discharge in violation of Title VII * * * if 'he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement.'" Wright, 525 U.S. at 75-76 (quoting Gardner-Denver, 415 U.S. at 49).

Over twenty years later, the Supreme Court was again confronted with a similar issue in Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998). The appeal in Wright raised the following question: "whether a general arbitration clause in a collective-bargaining agreement * * * requires an employee to use the arbitration procedure for an alleged violation of the Americans with Disabilities Act of 1990 * * * 42 U.S.C. § 12101 et seq." Wright, 525 U.S. at 72. The Supreme Court held that any waiver of an employee's statutorily created rights in a collective bargaining agreement would have to be "clear and unmistakable." Id. at 80 ("[T]he right to a federal judicial forum is of sufficient importance to be protected against less-than-

explicit union waiver in a CBA."). With respect to the particular collective bargaining agreement at issue, the Supreme Court observed that it contained only a general arbitration provision,[13] providing for "arbitration of matters under dispute," and, thus, contained no sufficiently clear and unmistakable waiver of statutory rights under the Americans with Disabilities Act. Id. at 80.[14]

In Wright, 525 U.S. at 82, the Supreme Court added that it did not "reach the question [of] whether such a [clear and unmistakable] waiver would be enforceable." However, the Supreme Court subsequently answered that question in the affirmative in 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009).[15] In 14 Penn Plaza the plaintiffs submitted their employment discrimination claims to arbitration pursuant to the collective bargaining agreement between the parties, and they brought a claim for employment discrimination in federal court under the Age Discrimination in Employment Act of 1967 (codified in 29 U.S.C. §§ 621 to 634). 14 Penn Plaza, 556 U.S. at 251. The collective bargaining agreement between the parties provided as follows:

> "NO DISCRIMINATION. There shall be no discrimination against
> any present or future employee by reason of race, creed, color, age,
> disability, national origin, sex, union membership, or any

---

[13]     The Supreme Court noted that the collective bargaining agreement at issue in Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998), unlike the one at issue in Gardner-Denver, did not contain "its own specific antidiscrimination provision." Id. at 80.

[14]     See also O'Brien v. Town of Agawam, 350 F.3d 279, 285-86 (1st Cir. 2003) (holding that an arbitration provision that applied "only to grievances, which in turn [were] defined as allegations that the [employer] violated the CBA" and contained no reference to statutory claims did not constitute a clear and unmistakable waiver) (emphasis in original) (internal quotation marks omitted).

[15]     See David L. Gregory & Edward McNamara, Mandatory Labor Arbitration of Statutory Claims, and the Future of Fair Employment: 14 Penn Plaza v. Pyett, 19 Cornell J.L. & Pub. Pol'y 429 (2010) (a scholarly article analyzing and discussing the Supreme Court's decision in 14 Penn Plaza).

characteristic protected by law, <u>including</u>, <u>but</u> <u>not</u> <u>limited</u> <u>to</u>, <u>claims</u> <u>made</u> <u>pursuant</u> <u>to</u> Title VII of the Civil Rights Act, the Americans with Disabilities Act, <u>the</u> <u>Age</u> <u>Discrimination</u> <u>in</u> <u>Employment</u> <u>Act</u>, the New York State Human Rights Law, the New York City Human Rights Code, ... or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination." <u>14 Penn Plaza</u>, 556 U.S. at 252 (emphasis added).

The Supreme Court held that the above-quoted language was sufficient to meet the test set out in <u>Wright</u>; it stated that the collective bargaining agreement at issue "clearly and unmistakably require[d] [the parties] to arbitrate the age-discrimination claims at issue in [the] appeal."[16] <u>Id.</u> at 260. With regard to <u>Gardner-Denver</u>, the Supreme Court in <u>14 Penn Plaza</u> stated that that earlier decision did "not control the outcome where, as [was the case in <u>14 Penn Plaza</u>], the collective-bargaining agreement's arbitration provision expressly cover[ed] both statutory and contractual discrimination claims," noting that "[s]ince the employees [in <u>Gardner-Denver</u>] had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions."[17] <u>Id.</u> at 264.

We read <u>Gardner-Denver</u>, <u>Wright</u>, and <u>14 Penn Plaza</u> to stand for the proposition that, when a collective bargaining agreement clearly and unmistakably waives the right to pursue

[16]     The Supreme Court in its decision in <u>14 Penn Plaza LLC v. Pyett</u>, 556 U.S. 247 (2009) noted that there was no evidence that Congress intended to exempt age discrimination claims under the Age Discrimination in Employment Act from arbitration. <u>Id.</u> at 255-60.

[17]     While the Supreme Court in <u>14 Penn Plaza</u> took issue with some aspects of the <u>Gardner-Denver</u> decision, nothing in the <u>14 Penn Plaza</u> decision "suggests any wavering in the Court's commitment to the traditional separation between contractual CBA rights and statutory Title VII rights." <u>United States v. Brennan</u>, 650 F.3d 65, 123 n.56 (2d. Cir. 2011); <u>see</u> generally <u>Manning v. Boston Medical Center Corp.</u>, 725 F.3d 34, 51 (1st Cir. 2013) ("[T]here is no authority for the proposition that rights under the [Fair Labor Standards Act] merge into contractual ones whenever the two overlap.") (internal quotation marks omitted).

- 16 -

statutory claims in a judicial forum, the federal courts will honor that waiver and bar the plaintiffs from pursuing their claims in court. See Manning v. Boston Medical Center Corp., 725 F.3d 34, 52 (1st Cir. 2013) ("[I]n order for a CBA to subject a federal statutory claim to arbitration, any such waiver must be clear and unmistakable on its face.") (internal quotation marks omitted). Such an approach strikes us as being eminently sensible, and it is our judgment that a similar principle should be applied in the case at bar. Accordingly, under the facts presented in the instant case, it is our holding that the right to a judicial forum for claims brought specifically under the RICRA or the FEPA can be waived in a collective bargaining agreement if, and only if, that waiver is clear and unmistakable. Such a holding is not inconsistent with our holding in Cipolla, where those anti-discrimination statutes were not implicated.

The RICRA and the FEPA reflect the General Assembly's very explicit determination that those statutes are necessary to militate against "grave injury to public safety, health, and welfare." Section 28-5-2. The General Assembly has sounded neither an uncertain nor a muted trumpet in this domain; it has clearly manifested an intent of the highest order to extirpate discrimination in employment in view of its deleterious effect on individuals and on society more generally. See Horn v. Southern Union Co., 927 A.2d 292, 293 (R.I. 2007) (stating that the RICRA was enacted to provide "'broad protection against all forms of discrimination in all phases of employment'") (quoting Ward v. City of Pawtucket Police Department, 639 A.2d 1379, 1381 (R.I. 1994)); Folan v. State Department of Children, Youth, and Families, 723 A.2d 287, 290 (R.I. 1999) (stating that the FEPA was enacted to "assure equal employment opportunities for all persons by eliminating discriminatory practices"). The General Assembly specifically and solemnly declared that the FEPA was designed to address "matter[s] of state

concern * * * [which] foment[] domestic strife and unrest * * * and undermine[] the foundations of a free democratic state."  Section 28-5-2; see footnote 10, supra.

The CBA at issue in this case does not contain sufficiently precise language indicative of the required clear and unmistakable assent to waive a specific statutory right to a judicial forum that is plaintiff's by virtue of the RICRA and the FEPA.  It is true that the CBA in the instant case does contain a provision stating that "[n]either the Employer nor the Union shall discriminate against or in favor of any Employee on account of race [or] color * * * ."  However, the CBA before us, unlike the one at issue in 14 Penn Plaza, does not contain any reference to the RICRA or the FEPA.  Thus, it specifically states that only disagreements regarding the misapplication of the CBA will be grieved and arbitrated.  Contrary to defendant's arguments, such a general arbitration provision simply is not sufficient to clearly and unmistakably waive an employee's rights under the RICRA or the FEPA.  See Manning, 725 F.3d at 52 (stating that "a broadly-worded arbitration clause such as one covering any dispute concerning or arising out of the terms and/or conditions of [the CBA] * * * will not suffice; rather, something closer to specific enumeration of the statutory claims to be arbitrated is required") (internal quotation marks omitted); Ibarra v. United Parcel Service, 695 F.3d 354, 359-60 (5th Cir. 2012) (pointing out that some "courts have concluded that for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims"); see also Coleman v. Donahoe, 667 F.3d 835, 854 (7th Cir. 2012); Powell v. Anheuser-Busch, Inc., 457 F. App'x 679, 680 (9th Cir. 2011).[18]

---

[18]    The defendant relies on Jensen v. Calumet Carton Co., No. 11-C-2785, 2011 WL 5078875 (N.D. Ill. Oct. 25, 2011) in support of its argument that plaintiff waived her statutory

We are keenly aware that we have repeatedly applied a presumption in favor of arbitration. See, e.g., City of Newport v. Local 1080, International Association of Firefighters, AFL-CIO, 54 A.3d 976, 981 (R.I. 2012) ("[T]his Court resolves doubts as to the arbitrability of disputes in favor of arbitration."). However, in the context of claims under the RICRA or the FEPA, that presumption "does not extend beyond the reach of the principal rationale that justifies it," which is that arbitrators are in a better position than courts to interpret contracts, but not necessarily state law. Wright, 525 U.S. at 78. Based on the general language of the CBA, we perceive no evidence of a waiver of plaintiff's statutory right to a judicial forum, let alone a waiver which would be characterized as clear and unmistakable.[19]

In conclusion, in this case, we hold that a general arbitration provision in a CBA which contains no specific reference to the state anti-discrimination statutes at issue does not constitute a clear and unmistakable waiver of the plaintiff's right to a judicial forum in which to litigate claims arising under the RICRA and the FEPA.

---

right to a judicial forum in the CBA. However, the decision in Jensen is not controlling, nor do we find its reasoning to be persuasive.

[19] The plaintiff also contends that the CBA at issue in the instant case does not give her the right to pursue a claim for arbitration but instead leaves that right in the hands of the union; plaintiff posits that, in situations like the one before us, when a union "fail[s] to act within the [CBA] [it] acts as a bar to forcing [an] individual to adhere to the terms of the CBA." We need not, and therefore do not, address this argument given our holding that the language of the CBA was not sufficient to waive plaintiff's right to access to a judicial forum. See United States v. Gertner, 65 F.3d 963, 973 (1st Cir. 1995) (stating that the "judicial task, properly understood, should concentrate on those questions that must be decided in order to resolve a specific case"); see also PDK Laboratories Inc. v. United States Drug Enforcement Administration, 362 F.3d 786, 809-10 (D.C. Cir. 2004) (Roberts, J. concurring) (stating that the case raised "'perplexing questions'" and consequently, "'[t]heir difficulty admonishes [the Court] to observe the wise limitations on [its] function and to confine [itself] to deciding only what is necessary to the disposition of the immediate case'") (quoting Whitehouse v. Illinois Central Railroad Co., 349 U.S. 366, 372–73 (1955)); Grady v. Narragansett Electric Co., 962 A.2d 34, 42 n.4 (R.I. 2009) (referring to "our usual policy of not opining with respect to issues about which we need not opine").

## IV

## Conclusion

For the reasons set forth in this opinion, we vacate the Superior Court's order granting the defendant's motion to stay and ordering that the matter be resolved through binding arbitration. This case is remanded to the Superior Court for further proceedings.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**  Reynalda Weeks v. 735 Putnam Pike Operations, LLC d/b/a Greenville Skilled Nursing and Rehabilitation.

**CASE NO:**  No. 2012-356-Appeal.
(PC 11-5663)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  Februrary 28, 2014

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

For Plaintiff:  David S. Cass, Esq.

For Defendant:  William E. O'Gara, Esq.